The BANK OF WOODSON, Appellant,

v.

Robert STEWART, State Banking Commissioner, et al., Appellees.

No. 13695.

Court of Appeals of Texas, Austin.

May 12, 1982.

Rehearing Denied June 2, 1982.

Thomas W. George, George & George, Austin, for appellant.

Mark White, Atty. Gen., Thomas M. Pollan, Asst. Atty. Gen., Austin, for appellees.

POWERS, Justice.

The question for decision is whether the district court of Travis County had jurisdiction of either of two causes of action[1] al-leged by the Bank of Woodson against the State Commissioner of Banking and the Federal Deposit Insurance Corporation (FDIC). Seeking temporary and permanent injunctions, the Bank alleged that the Commissioner's summary closing of its banking house and his seizure of the Bank's property were in deprivation of its *constitutional* right to due process of law; and alleged that due process required *prior* notice and hearing before such actions could lawfully be taken. The Bank, as a basis for the same relief, alleged as well a *statutory* right to such notice and hearing, challenged the *statutory* finding made by the Commission as a basis for his action in closing the Bank summarily, and urged a *statutory* ground for requiring the Commissioner to hold the Bank's assets *pendente lite*, with a prayer that the assets be restored to the Bank after final hearing. We will hold the Travis County district court had jurisdiction of the Bank's constitutional cause of action but not the statutory cause of action. The latter amounts in substance to the statutory

1. The Bank's petition in the trial court sets out the following events which preceded its suit against the Commissioner and the FDIC, each being sued in an official capacity. The Bank operates a banking house in the town of Woodson, Throckmorton County, Texas. On February 25, 1982, the Commissioner, through his examiners, charged off or "classified" a substantial portion of the Bank's loan portfolio and required that $700,000 cash be deposited in the Bank before March 1, 1982, which date was only four days following. The Commissioner declared the Bank would be closed and its assets liquidated if the deposit were not timely made. Despite such short notice, the bank was attempting to acquire the $700,000 when, on March 1, 1982 and true to his declaration, the Commissioner closed the Bank.

The Bank averred the Commissioner erred in his decision to charge off the loans; that the Bank is not insolvent as found by the Commissioner; that his actions were unlawful because they were taken in violation of the requirements of article 342–803 of the State Banking Code of 1943, namely: (a) he gave no prior notice of the Bank's problems and his requirement that they be "made good;" (b) he did not allow the Bank the requisite ten days within which to cure the problems and demonstrate to the Commissioner that they had done so; (c) he failed to certify the pertinent matters to the State Banking Board for hearing; and (d) he failed to obtain an order of the Board authoriz-ing his actions in closing the Bank and liquidating the assets.

Continuing, the Bank alleged that the Commissioner, if not restrained by the Court, would liquidate the Bank's assets or transfer them to the FDIC for liquidation, and such action by either would cause irreparable injury to the Bank in the form of destroying its business and depriving it of its constitutional and statutory rights to prior notice and hearing, as guaranteed in Article I, §§ 17 and 19 of the Constitution of the State of Texas, 1876; Amendments 5 and 14 of the Constitution of the United States; and, article 342–805 of the Texas Banking Code of 1943. In the alternative to its claim of a statutory right to such notice and hearing, the Bank alleged that article 342–805 was unconstitutional, under the same constitutional provisions, if construed to permit the closing of the Bank and the liquidation of its assets without prior notice and hearing.

Claiming the Bank had no adequate remedy at law, it prayed for temporary and permanent injunctions restraining both defendants, the Commissioner and the FDIC, from liquidating the Bank's assets, the closing being an accomplished fact. The Bank also requested that its assets be returned to it after final hearing. Alternatively, it requested that the Commissioner be ordered to retain the Bank's assets, without liquidating them, pending a final disposition of the cause, as he was required to do under the provisions of article 342–805.

liquidation contest authorized by the provisions of article 342–805, a part of the Texas Banking Code of 1943.[2] The Legislature placed exclusive jurisdiction to determine that contest in the district court of the bank's domicile, that domicile being Throckmorton County, Texas, in this instance.

The Commissioner and the FDIC responded to the Bank's suit by filing their respective motions to dismiss for want of jurisdiction. We find in the transcript no order which determines the FDIC's motion and we do not consider it. The Commissioner's motion prayed for dismissal of the Bank's suit on the theory that the liquidation provisions of the Texas Banking Code of 1943, articles 341–801 through 342–816,[3] give the Commissioner authority to close the Bank

---

2. Tex.Rev.Civ.Stat.Ann. arts. 342–801 through 342–951 (1973 and Supp.1982).

3. Unless otherwise indicated, the statutory references throughout this opinion are to the Texas Banking Code of 1943, chapter VIII of which pertains to the liquidation of State-chartered banks. The articles pertinent to an understanding of this opinion are set forth, in part, as follows:

Article 342–101. *Scope of Act—Short Title* This code provides a complete system of laws governing the organization, operation, supervision and liquidation of state banks, and to the extent indicated by the context, governing private banks and national banks domiciled in this State; . . .

Article 342–207. *Commissioner—General Powers—Duties—Liabilities of Commissioner and Others—Defense by Attorney General* The Commissioner shall supervise and shall regulate, as provided in this Code, all state banks and shall enforce the provisions of this Code in person or through the Deputy Commissioner, the Departmental Examiner or any examiner. . . .

Article 342–801. *Exclusive Method of Liquidation* The methods of liquidation of state banks as provided for in this Code shall be exclusive and no state bank shall make an assignment for the benefit of creditors, nor shall any court appoint a receiver for any state bank. Provided, however, nothing in this article shall prohibit the liquidation of a state bank by the Federal Deposit Insurance Corporation as provided in Article 489b, Acts 1935, Forty-fourth Legislature of Texas, Page 459, Chapter 183.

Article 342–801a. *Supervision of Banks—Conservatorship Proceedings—Review—Procedure* [This article provides for the Commissioner's supervision of a State bank by way of a conservatorship when the Commissioner in his opinion determines that the bank is in an "unsafe condition," as defined in the article, and "its condition is such as to render the continuance of its business hazardous to the public or to its depositors and creditors, or . . . if such bank gives its consent. . . ." A bank may be determined by the Commissioner to be in an "unsafe condition" when any one of several circumstances exist: the bank's capital is impaired or that circumstance is threatened; it conducts its business in an unsafe and unauthorized manner; it violates any provision of the code or other statute; it violates its charter or any agreement it may have made with the Commissioner; it conducts any fraudulent or questionable practice that endangers its reputation or threatens its solvency. The bank violates or "exceeds" its character or other powers when it "has neglected or refused to observe an order of the Commissioner to make good, within the time prescribed, any impairment of its capital.]

Article 342–803. *Closing State Banks—By Commissioner—By Directors* Whenever the Commissioner, through examination, finds that the interests of depositors and creditors of a state bank are seriously jeopardized through its insolvency or imminent insolvency and that it is to the best interest of such depositors and creditors that the bank be closed and its assets liquidated, he may close and liquidate the bank, unless its board of directors close the bank and place it in his hands for liquidation. Further, if the Commissioner, through examination, finds that the capital of a state bank is seriously impaired, or that it is conducting its affairs in an unsafe, unauthorized or unlawful manner, or that it refuses to submit to examination, or is hindering examination, he shall call together the directors of such bank and lay before them the facts and require such bank to make good the matter or matters complained of. If the board of directors of such bank fails or refuses to file with the Commissioner, within ten (10) days from the date of the Commissioner's official notice, satisfactory evidence that the matter or matters complained of have been cured to the satisfaction of the Commissioner, then in such event the Commissioner shall certify such facts to the State Banking Board, whereupon the State Banking Board shall notify such directors of a hearing to be held in Austin, Texas, not less than five (5) nor more than ten (10) days from the date such notice is mailed. Said directors may appear at such hearing and be heard and after said hearing said State Banking Board may order such bank closed and its affairs liquidated as provided in this Code, or said State Banking Board may enter such order as said State Banking Board may deem appropriate.

Article 342–804. *Posting of Notice—Creation of Liens, Transfers and Payment after Closing* Immediately after the closing of any state bank by its directors or by the Commis-

and liquidate its assets under the exclusive supervision and jurisdiction of the district court of Throckmorton County. Articles 342–805 and 342–806 provide that this special jurisdiction includes the power to entertain and determine any contest of the court-supervised liquidation proceedings, and the ancillary power to enter an injunction *pendente lite*, restraining liquidation of

the Bank's assets before final hearing of the liquidation contest. No statutory liquidation proceeding was pending in the district court of Throckmorton County at the time the Commissioner's motion was heard in Travis County.

The trial court sustained the Commissioner's motion and dismissed the Bank's suit for want of jurisdiction. This Court, on

sioner under the provisions of Article 3 of this chapter [article 342–803], the Commissioner shall place an appropriate sign to that effect at the main entrance to the bank, and thereafter no judgment lien, attachment lien or other voluntary lien shall attach to any asset of said bank, nor shall the directors, officers or agents of such bank thereafter have authority to act for or on behalf of said bank or to convey, transfer, assign, pledge, mortgage or encumber any asset thereof, and any attempt by any officer, director or agent to transfer, assign, convey, mortgage or pledge any asset of the bank or to create any lien thereon or in any manner to prefer any depositor or creditor of the bank after the posting of such notice or in contemplation thereof shall be void.

Article 342–805. *Contest of Liquidation* At any time within five (5) days after the Commissioner has closed any state bank under the provisions of Article 3 of this chapter [article 342–803], such bank, acting through its directors, may sue in the district court of the bank's domicile to enjoin the Commissioner from liquidating such bank, and the court, or the judge thereof if in vacation, may, without notice or hearing, restrain the Commissioner from liquidating the assets of such bank pending hearing on the merits, and shall, in that event instruct the Commissioner to hold the assets of such bank in his possession pending final disposition of such suit. The Commissioner shall thereupon refrain from liquidating such assets, provided, however, the Commissioner may, with the approval of the district judge, take such action as may be necessary or proper to prevent loss or depreciation in the value of the assets. The court shall, as soon as possible, hear the suit upon its merits and shall enter a judgment (1) enjoining the Commissioner from liquidating the assets of such bank, or (2) refusing such injunction. Appeal shall lie from such judgment as in other civil cases, but the Commissioner, irrespective of the character of judgment entered by the trial court or any supersedeas bond filed, shall retain possession of the assets of such bank pending final disposition on appeal.

Article 342–806. *Inventory of Assets—Custodia Legis—Jurisdiction* Promptly after the Commissioner has acquired possession of the assets of a state bank for liquidation, he shall prepare and file in the office of the district clerk of the county of the bank's domicile an

inventory of such assets, and the clerk shall assign a cause number to the proceedings so instituted. The assets of the bank shall be deemed to be in the custody of the court in which such proceedings are pending and all suits and orders provided for under this chapter [articles 342–801 through 342–816] shall be deemed to be in the nature of interventions or orders in said proceedings, of which suits and orders said court shall have exclusive jurisdiction. Provided, however, that during vacation of such court, the judge thereof shall be authorized to enter any of such orders and to conduct any hearing incident thereto.

Article 342–807. *Resumption of Business—Reorganization* No state bank which has been closed under the provisions of Article 3 of this Chapter [article 342–803] shall be reopened unless the contest provided for under Article 5 [article 342–805] of this chapter is finally determined adversely to the Commissioner, or unless the Commissioner, acting under order of the district court, shall authorize such reopening by a certificate under the seal of his office.

Article 342–812. *Powers of Commissioner—Sale of Assets, Compromises and Agreements* Pursuant to the order of the district court, entered with or without hearing, the Commissioner may sell any of the assets of a state bank in his hands for liquidation; may borrow money and pledge the whole or any part of such assets of such bank to secure the debt created; may compromise or compound any bad or doubtful claim held by or asserted against such bank; and may enter into any other kind or character of contract or agreement on behalf of such bank which he deems necessary or proper to the management, conservation or liquidation of its assets and all parties interested in the affairs of such bank shall be bound and precluded by the action of the Commissioner. Provided that said court, if it deems it advantageous or proper, may require notice and hearing before entering any order, and in that event shall, by order, fix the time and place of the hearing and prescribe the character of notice to be given thereof.

Article 342–813. *Expenses of Administration* The expense of liquidation of state banks shall be paid out of the assets thereof, subject to review and approval by order of the district court.

March 12, 1982, granted a temporary injunction to preserve our jurisdiction of the Bank's appeal from the trial court's order of dismissal. Our temporary injunction restrained the Commissioner and the FDIC (to which the Commissioner had assigned the Bank's assets immediately on obtaining a dismissal of the cause) from liquidating the Bank's assets pending appeal, but expressly permitted the Commissioner and the FDIC to conduct the Bank's affairs in the ordinary course of business. It later appeared that on the same day the application for temporary injunction was submitted to this Court, the FDIC, acting for the Commissioner, initiated in the district court of Throckmorton County the statutory liquidation proceedings by filing an inventory of the Bank's assets as required by article 342–806.

Resolution of the issue of the trial court's jurisdiction requires consideration of the various provisions of the Code which deal with the liquidation of State-chartered banks and those constitutional and statutory provisions which assign subject-matter jurisdiction to the district courts of the State, our courts of original jurisdiction, in a distribution of the State's judicial power.

The Bank first alleges that its property has been seized by the Commissioner, acting for the State, without prior notice and hearing, and therefore in violation of the due process guarantee of the 14th Amendment to the United States Constitution and Article I, §§ 17 and 19 of the Constitution of the State of Texas. *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

Pointing to the obviously correct proposition that the Code was intended to provide a comprehensive scheme for the regulation of state-chartered banks, including their closing and liquidation, and to the equally obvious necessity for summary action in closing an unsafe or insolvent bank on some occasions, the Commissioner replies that the circumstances justified his actions in closing the Bank in this instance without prior no-

tice and hearing, and claims that his actions were expressly authorized by the first sentence of article 342–803, which statute is quoted in footnote three. He contends as well that such summary actions, authorized by statute for emergency situations, are constitutional, citing *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).

The Bank rejoins by asserting that article 342–803 should be interpreted as a whole and, therefore, as authorizing the Commissioner to close a State-chartered bank and liquidate its property only *after*: (a) the bank has consented to such actions *or* the Commissioner has laid the facts before the bank's directors; (b) they have failed to cure, within the ten days allowed by the article, the conditions which are claimed by the Commissioner to be unsafe, unlawful, or unauthorized; (c) the circumstances have been certified to the State Banking Board; and (d) after hearing before that body, the Commissioner has obtained an order of the Board requiring that the bank be closed "and its affairs liquidated as provided in [the] Code." These are, of course, the procedural steps set out in article 342–803, which the bank alleges apply to *all* bank closings, emergency or otherwise. And, the Bank contends, if this is not the force and effect of article 342–803, as properly interpreted, then its property has been seized, and threatens to be liquidated, without the notice and opportunity for hearing which due process of law requires.

We do not, of course, express an opinion as to the merits of the parties' respective claims. The sole issue before us at this time is the jurisdiction of the Travis County district court, that is, whether it had power to hear and determine either the statutory or constitutional rights asserted by the Bank as bases of its causes of action.

We believe neither party, in their zeal, has properly recognized the effect of the two different and discrete rights alleged by the Bank. Each party assumes that only one district court in the State may adjudicate both claims, irrespective of the origin of the rights which form the bases of the Bank's claims. While that may be desirable as a matter of judicial administration, it is not a jurisdictional prerequisite.

In our view, the trial court properly dismissed, for want of jurisdiction, those claims made by the Bank which were based solely upon rights granted by the Code. The Legislature has committed these claims to the exclusive jurisdiction of the district court of the Bank's domicile. That court is the only court which may grant the *statutory* relief authorized by the Code, that is, an order directing the Commissioner to reopen the Bank for operation by the Bank directors and officers, if the Bank is correct in its claim that article 342–803 gives it a *statutory* right to prior notice and hearing in the particulars set out in the article, or the Commissioner's *statutory* findings were erroneous. Therefore, the Commissioner is quite correct in his contention that the exclusive jurisdiction to determine such matters lies in the district court of Throckmorton County, for they concern rights given the Bank solely by the Code, which also assigns their adjudication to the district court of the Bank's domicile as part of a liquidation contest.

The right to judicial review of such administrative decisions and actions is normally a creature of statute, in this instance articles 342–805, 342–807 and 342–812 particularly. *Stone v. Texas Liquor Control Board*, 417 S.W.2d 385 (Tex.1967). Having created this right of judicial review, by allowing the Bank to intervene in the court-supervised liquidation proceedings, the Legislature could and did designate the one district court wherein the proceedings should be conducted and the liquidation contest adjudicated. It follows, of course, that by article 342–805 the Legislature could validly empower that one district court to enjoin the Commissioner from liquidating the assets of the Bank *pendente lite*, which power the court undoubtedly had in any event, whether to protect the special statutory jurisdiction given it by the Code or as a power granted by the injunction statute, Tex.Rev.Civ.Stat.Ann. art. 4642 (1952). That this judicial review is made exclusive in the district court of Throckmorton County appears in the express provisions of the Code: "The methods of liquidation of state banks as provided for in this Code shall be exclusive ... [art. 342–801]";

"[p]romptly after the Commissioner has acquired possession of the assets of a state bank for liquidation, he shall prepare and file in the office of the district court of the county of the bank's domicile an inventory of such assets ... [art. 342–806]"; "[t]he assets of the bank shall be deemed to be in the custody of the court in which such proceedings are pending and all suits and orders provided for under this chapter *shall be deemed to be in the nature of interventions or orders in said proceedings, of which suits and orders said court shall have exclusive jurisdiction [id.]*"; and finally, no "state bank which has been closed under the provisions [of the Code which relate to conservatorship, closing and liquidation] shall be reopened unless the contest provided for under [article 342–805] is finally determined adversely to the Commissioner, or unless the Commissioner, acting under orders of the district court, shall authorize such reopening ... [art. 342–807]" (emphasis added).

Consequently, respecting the Bank's claims which are founded upon rights allegedly given by article 342–803 or other provisions of the Code, we hold the district court of the Bank's domicile, the district court of Throckmorton County, has exclusive jurisdiction to determine such claims in its supervision of the liquidation proceedings authorized by the Code, including the power to conduct the liquidation contest and to order the bank's reopening or its liquidation, as given in articles 342–805, 342–806, and 342–807.

Nevertheless, the Bank's petition averred as well a constitutional right, irrespective of any statute, to be free of governmental seizures of its property except in accordance with due process of law, which the Bank contends required prior notice and hearing in the circumstances. The Bank alleged specifically that the Commissioner seized and threatens to liquidate its property in violation of this constitutional right. Whether this cause of action is meritorious or not, we believe the district court of Travis County had subject-matter jurisdiction to adjudicate it, and to order appropriate relief if the Commissioner's actions were found to be in violation of the Bank's constitutional rights.

If the trial court determines that the Commissioner acted unconstitutionally, as the Bank alleges, the Bank was not required to await the statutory liquidation proceedings authorized by the Code before resorting to the courts for protection. *Glen Oaks Utilities, Inc. v. City of Houston,* 161 Tex. 417, 340 S.W.2d 783 (1960). Even without statutory authorization for judicial review of administrative actions, the district courts of the State have the power to hear and determine a claim that an agency acted in violation of the due process clauses of the Constitution of this State and of the United States, and to order appropriate relief. *Firemen's & Policemen's Civil Service Commission v. Blanchard,* 582 S.W.2d 778 (Tex.1979); *Brazosport Savings and Loan Association v. American Savings and Loan Association,* 161 Tex. 543, 342 S.W.2d 747 (1961). Banking corporations have a vested property right in their charters which these constitutional guarantees protect from contrary administrative action. *Chemical Bank & Trust Co. v. Falkner,* 369 S.W.2d 427 (Tex.1963). The right of judicial review in such cases is said to be "axiomatic." *City of Houston v. Blackbird,* 394 S.W.2d 159

(Tex.1965). Property rights cannot be determined by the orders of an administrative agency without affording a right of judicial review. *Schwantz v. Texas Department of Public Safety,* 415 S.W.2d 12 (Tex.Civ.App. —Waco 1967, writ ref'd).

The right of judicial review of administrative agency actions may be given by statute but if vested property rights are invaded by such actions, the right exists with or without a statute which confers it. For our purposes, the distinction is important because only in the former case, that is, in *legislative* grants of judicial review, may the legislature validly confer exclusive jurisdiction upon a single district court.

For example, the right to challenge administrative agency actions, by an original action in district court, on the basis that such actions unconstitutionally deprive the plaintiff of a vested property right, is a right to judicial review distinctly different from the right to such review which is given in the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, §§ 12, 19.[4] This right is equally distinct and dif-

---

4. APTRA §§ 12 and 19 authorize judicial review of two different kinds of administrative action: rule making and adjudications. In either case, judicial review is made exclusive in the district courts of Travis County.

Section 12 empowers the Travis County district courts to hear and determine by declaratory judgment the plaintiff's allegations that an agency rule interferes with or impairs a plaintiff's legal rights, or even a legal privilege which he may possess, or that the rule threatens such results. Shannon and Ewbank, The Texas Administrative Procedure and Texas Register Act Since 1976—Selected Problems, 33 Baylor L.Rev. 393, 420–436 (1981).

Section 19 empowers the Travis County district courts to review for errors of law the final order and the proceedings in any "contested case" adjudicated in an agency in its exercise of that portion of the State police power assigned to the agency and delegated to it by statute. APTRA defines "contested case" to mean "a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing."

The rights of judicial review granted by §§ 12 and 19 are distinctly and intrinsically different from an *original action* in any district court

where the plaintiff alleges and seeks to prove by his legal arguments and a preponderance of the evidence introduced in court that an administrative official has acted unconstitutionally in seizing the plaintiff's property, with a prayer for appropriate relief.

For example, with respect to the "appeal" authorized by § 19, the judicial review is conducted only after the exhaustion of any administrative remedy and the entry of a final order in the agency, having reference only to the evidence and record of proceedings compiled in the agency, except where a statute directs *de novo* proceedings on judicial review. In either case (a *de novo* or other review), the factual determinations of the agency are examined under the substantial evidence rule. Indeed, the substantial evidence rule originated in *de novo* judicial reviews. In these "appeals" under § 19, the district court is empowered by APTRA only to affirm the agency's final order or reverse it and remand the case to the agency for further proceedings.

The mere fact that § 19 allows a reversal and remand to the agency when the court finds substantial rights of the appellant have been prejudiced by an administrative finding, inference, conclusion, or decision which violates a constitutional provision does *not* change the

ferent from the right to judicial review conferred in numerous other statutes which delegate portions of the State's police power to various administrative agencies, prescribe how and on what conditions the delegated power may be exercised, and provide for judicial review of specific instances where the power is exercised, frequently by suit in a district court of Travis County, Texas. *See e.g.*, Tex.Rev.Civ.Stat.Ann. arts. 41a–1 (Supp.1982); 135b–6, § 9 (Supp. 1982); 5221a–5, § 5 (Supp.1982). Article 342–805 is such a statute.

Articles 342–805 through 342–807 are the provisions relied upon by the Commissioner in his claim of "exclusive jurisdiction" in the district court for Throckmorton County. These provisions are derived from practically identical provisions in earlier statutes stretching back to 1905. Under such statutes, the Commissioner has consistently been held to occupy the position of a receiver when he liquidates a closed bank under the supervision and orders of the district court in the county of the bank's domicile. *Brand v. San Patricio County*, 80 S.W.2d 460 (Tex.Civ.App.—San Antonio 1935, writ ref'd); *State Banking Board v. Winters State Bank*, 13 S.W.2d 391 (Tex.Civ.App.— Austin 1929, writ ref'd).

But it has never been held that the special jurisdiction conferred upon the district court of the bank's domicile is "exclusive" to the extent of precluding any suit elsewhere in *any* matter involving the affairs of a bank which is the subject of liquidation proceedings in the district court of its domicile. For example, in *Ogden v. Edwards*, 108 S.W.2d 675 (Tex.Civ.App.—Amarillo 1937, no writ), the holder of promissory notes, secured by a vendor's lien, sued to foreclose the lien. The maker of the notes had conveyed the land to a bank which afterwards was made the subject of liquidation proceedings in the district court for a different county. The Court of Civil Appeals held that the district court in the

county where the land lies had jurisdiction of the suit to foreclose the vendor's lien, rejecting the contention that the lienholder's suit was required to be brought in the district court where the liquidation proceedings were conducted. Acknowledging the grant of exclusive jurisdiction to that court, the Court of Civil Appeals said:

> It does not follow, however, that because the court in which a liquidation is pending has exclusive possession of the property owned by the bank involved in the liquidation, no other court in the state has jurisdiction to litigate any matter connected with it.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The suit . . . was upon vendor's lien notes and to foreclose the vendor's lien. The land was located in Yoakum county, and venue unquestionably was properly laid in that county. It involved a matter over which that court had jurisdiction, and, under the statute and holdings of the courts of this state, the pendency of the liquidation and resulting receivership of the properties of the Slaton State Bank, although in another court, did not in any respect interfere with the Yoakum county district court in its jurisdiction of the matters in controversy.

It may be argued, however, that the foregoing case is dissimilar from the present case where the Bank challenges on constitutional grounds the official actions of the Commissioner, a challenge which could easily and logically be made in the context of the liquidation contest authorized by article 342–805. But the difference is immaterial, for it is the *nature of the right* urged by the plaintiff which determines whether the Throckmorton County district court has exclusive jurisdiction of a claim founded upon that right, and if the right was not or could not validly be assigned to the exclusive jurisdiction of that district court for adjudication, the Bank was free to assert it in any district court where personal jurisdiction of the Commissioner was acquired.

essential nature of the special statutory jurisdiction exercised by the court under APTRA. That part of § 19 simply reflects the unquestionable proposition that constitutional guaran-

tees pervade both administrative and judicial proceedings, as, indeed, they pervade all actions of government directed at individuals and, where appropriate, corporations.

There are other statutes[5] which confer a special and exclusive statutory jurisdiction upon specific district courts, but Tex.Rev. Civ.Stat.Ann. art. 6049c, § 8 is most valuable for our discussion because it has been most frequently the subject of decision by the Supreme Court of Texas. That statute confers upon the district courts of Travis County a special and exclusive jurisdiction to review the rules, regulations, and orders of the Texas Railroad Commission, a power which no court of the State would otherwise have except under such special statutory authorization or under the power of the regular district courts to hear and determine allegations that the plaintiff's vested property rights, or other fundamental rights, have been unconstitutionally invaded by official action. *City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788 (1951).

Article 6049c, § 8 has been construed as conferring upon the district courts of Travis County exclusive jurisdiction only with respect to the *statutory* right granted by that article for review of the Commission's rules, regulations, and orders; and such special and exclusive jurisdiction does *not* encompass common law causes of action, as for breach of contract, trespass, negligence, and so forth. These rights of action have a different origin and are committed to the regular district courts of the State for adjudication as part of their ordinary original jurisdiction. *Zimmerman v. Texaco*, 413 S.W.2d 387 (Tex.1967); *Gregg v. Delhi-Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411 (1961); *Looney v. Sun Oil Co.*, 170 S.W.2d 297 (Tex.Civ.App.—Texarkana 1943, writ ref'd). Subject to the ordinary venue and other statutes which regulate the jurisdiction, practice and procedure in all district courts alike, or which create courts of limited jurisdiction, these common law causes of action may be brought in any district court outside Travis County where personal jurisdiction may be acquired over the defendant and where venue is otherwise proper.

These causes of action may be prosecuted to judgment even though the judgment may moot entirely a statutory cause of action for judicial review of administrative action which grows out of the same circumstances and lies within the special and exclusive jurisdiction of a district court in Travis County. *Looney v. Sun Oil Co., supra.*

This distinction between the origin of the rights asserted, and between the ordinary original jurisdiction of a regular district court and the special exclusive jurisdiction of a Travis County district court under Article 6409c, § 8, was described as follows in *Alpha Petroleum Co. v. Terrell*, 122 Tex. 257, 59 S.W.2d 364 (1933):

> What we hold is that, where the suit is to enforce a right which exists only by operation of the statute, and not under the Constitution or the common law, it does lie within the power of the Legislature to designate a particular court as an exclusive tribunal to hear and determine such suit. In such a case where the statute, as this one does, provides that the suit shall be filed in a particular court, it demonstrates a conclusive legislative intent to designate such court as the only tribunal where such matters can be litigated, and, as said by our Supreme Court, speaking through Judge Cureton, in *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084, 1088: "In special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional."

In *Mingus v. Wadley, supra,* the Supreme Court of Texas expressly held that suits under the Workmen's Compensation Law (required to be brought to the county where the injury occurred) are in derogation of the common law, and the rights to be enforced in such suits and the remedies provided are purely statutory. Therefore, the Legislature could validly require that such suits be brought in the county where the injury occurred. *See also Bullock v. Amoco Production Co.*, 608 S.W.2d 899 (Tex.1980); *City of Strawn v. Board of Water Engineers*, 134 S.W.2d 397 (Tex.Civ.App.—Austin 1939, writ ref'd) (wherein the power of the Legislature to delineate and condition

---

5. There is a list of many of these statutes in *Schwantz v. Texas Department of Public Safe-* *ty*, 415 S.W.2d at 14, n. 2.

in a similar way the bringing of other statutory causes of action is affirmed.)

In contrast, the right of action asserted in *Looney v. Sun Oil Co., supra*, was not a creature of statute but originated in the common law. The court said:

> But it is to be observed from an examination of the pleadings and prayer for relief in the instant suit that plaintiff sues for specific performance of an alleged contract; to adjudicate and enforce and alleged contractual right. We know of no statutory provision and are cited to none which vests exclusive jurisdiction in a district court of Travis County to adjudicate such character of action as presented in the instant suit. The fact that the relief here sought, if sustained, may have the effect, indirectly, of destroying the value of defendant's permit to operate wells Nos. 2, 3 and 4, will not deprive the District Court of Gregg County of jurisdiction to hear and adjudicate this issue of the enforcement of the alleged contractual rights.

The distinction between a right of action given by statute to review governmental conduct, and a right of action to review such conduct which exists independently of statutory authorization, is illustrated in the present case. The right to contest on statutory grounds the closing of the Bank and the liquidation of its property is a statutory right created by article 342–805; it therefore lay within the power of the Legislature to designate the district court of Throckmorton County as the exclusive tribunal for the adjudication of that contest, in judicial review of the Commissioner's conduct, with the attendant power in that court to order the Bank reopened or liquidated, as the merits determined, and the ancillary power to preserve the matter for adjudication by enjoining the Commissioner *pendente lite* from liquidating the Bank's property. Nevertheless, the Bank's *other* cause of action to prevent by injunction or other appropriate relief the alleged unconstitutional seizure of its property by the Commissioner is *not* a suit to enforce a right which exists solely by operation of a statute. Rather, it is a right which existed before the enactment of any statute which regulates the banking business; a right which stands outside and independent of any statute and requires no legislative authorization before it may be asserted and vindicated in the regular district courts of the State. It is a constitutional right which the Travis County district court had power to adjudicate under the Bank's pleadings.[6] *Glen Oaks Utilities, Inc. v. City of Houston, supra; Chemical Bank & Trust Co. v. Falkner, supra; Brazosport Savings & Loan Association v. American Savings & Loan Association, supra.*

■ Having concluded that the Bank's constitutional cause of action, founded upon the allegation that the Commissioner's summary action deprived the Bank of a vested property right without due process of law, was within the subject-matter jurisdiction of the Travis County district court; and that the Bank's cause of action asserting its statutory rights under the Code was not within such jurisdiction, but in the exclusive jurisdiction of the Throckmorton County district court, the possibility of a conflict is apparent. However, the joinder of two causes of action in one suit, the trial court having jurisdiction of one but not the other, will not deprive the court of the power to hear and determine that cause of action of which it has jurisdiction. *Isbell v. Kenyon-Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762 (1924).

■ We are required, nonetheless, in the interests of an orderly system of justice, to harmonize the jurisdictions of the courts of the State so that each will be free to exercise the powers committed to it without conflict with other courts. *Tyler v. St.*

---

**6.** As we interpret article 342–805, it does not purport to make the district court of Throckmorton County the exclusive tribunal to hear and determine the Bank's allegations that the Commissioner has acted without authority and in deprivation of the Bank's property without due process of law. Therefore, it follows that the article is not an attempt by the Legislature to unconstitutionally deprive the other district courts of the State of the powers given them by article 5, § 8 of the Constitution of Texas. *Cf. Lord v. Clayton*, 163 Tex. 62, 352 S.W.2d 718 (Tex.1961); *Reasonover v. Reasonover*, 122 Tex. 512, 58 S.W.2d 817 (1933).

*Louis Southwestern Railway Co.,* 405 S.W.2d 330 (Tex.1966). In this instance, the Bank's claims based upon alleged statutory rights given in the Code must be adjudicated in Throckmorton County to the extent they may be brought at all; and their adjudication must be harmonized with the Travis County adjudication of the Bank's claim that due process of law required *prior* notice and hearing before the Commissioner seized the Bank's property and closed its banking operation; in other words that the Commissioner could not act summarily in the circumstances. We reiterate that we have not attempted in this opinion to comment on the merits of the Bank's allegations in either respect. It is obvious, however, that the Travis County suit should be finally determined before any liquidation contest brought by the Bank in Throckmorton County, for an adjudication in the Bank's favor would render void the Commissioner's actions in closing the Bank, seizing its assets and commencing the liquidation proceedings. In the meantime, the Travis County district court may not by its order disturb or invade the custody of the Bank's property now resting in the Throckmorton County district court by virtue of article 342–806. *Prince v. Miller,* 123 Tex. 118, 69 S.W.2d 52 (1934); *Kull v. Brown,* 165 S.W.2d 1011 (Tex.Civ.App.—Texarkana 1942, no writ); *Ogden v. Edwards, supra.*

Equally obvious is the proposition that the separate adjudications described above are cumbersome, expensive, inefficient and inconvenient to the parties, the courts, and the administration of justice generally. The Travis County district court first acquired jurisdiction of the Bank's claim based upon a constitutional right and is therefore entitled to adjudicate it free of hindrance by any other court. *Repka v. American National Insurance Co.,* 143 Tex. 542, 186 S.W.2d 977 (1945). The question remains whether it *should* exercise its jurisdiction. In that connection, we invite the parties' attention to the provisions of Tex. R.Civ.P. 255. A change of venue to Throckmorton County, with respect to the Bank's constitutional claim, and a joinder of that claim with the liquidation proceedings, would seem to be in the interest of all concerned.

Accordingly, we reverse and remand to the trial court the Bank's cause of action alleging that its banking operation was closed and its property seized without the prior notice and hearing which the Bank contends was necessary to satisfy the due process of law requirement of the 14th Amendment to the Constitution of the United States and Article I, §§ 17 and 19 of the Constitution of the State of Texas. In all other respects, the judgment of the trial court is affirmed.

Reversed and remanded in part; and affirmed in part.