**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Petitioner,**

v.

**MEGA CHILD CARE, INC., Respondent.**

No. 02–0728.

Supreme Court of Texas.

Argued on Sept. 11, 2003.

Decided Sept. 3, 2004.

Ron Beal, Waco, TX, pro se.

Bill Aleshire, Riggs and Aleshire, P.C., Austin, TX, for Amicus Curiae Texas Licensed Child Care.

Greg Abbott, Attorney Gen. of TX, Austin, Idolina Garcia, Hermes Sargent Bates, LLP, Dallas, Howard G. Baldwin, First Asst. Atty. Gen., Jeffrey S. Boyd, Thompson & Knight, Philip A. Lionberger, Brown McCarroll, L.L.P., Barry Ross McBee, Don Walker, Raymond C. Winter, Rafael Edward Cruz, Edward D. Burbach, Joseph Hughes, Office of Attorney Gen., and Kristofer S. Monson, Asst. Solicitor Gen., Austin, for Petitioner.

Booker T. Morris III, Nasiche B. Biscette, Booker T. Morris, III & Associates, Houston, TX, for Respondent.

Justice SMITH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice O'NEILL, Justice JEFFERSON, Justice WAINWRIGHT and Justice BRISTER joined.

In Texas, a person may obtain judicial review of an administrative action only if a statute provides a right to judicial review, or the action adversely affects a vested property right or otherwise violates a constitutional right. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex.2000); *Firemen's & Policemen's Civil Serv. Comm'n v. Kennedy*, 514 S.W.2d 237, 239 (Tex.1974); *City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788, 790 (1951).

The question in this case is whether a person who holds a child-care facility license may obtain judicial review of an administrative decision to revoke the license. The court of appeals held that the holder of a child-care facility license has a statutory right to judicial review. We will affirm.

**I**

In 1975, the 64th Legislature enacted the Administrative Procedure and Texas Register Act (APTRA), the first comprehensive statute governing the practices and procedures of Texas administrative agencies. *See* APTRA, 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136 (compiled as TEX.REV.CIV. STAT. art. 6252–13a). Section 19 of the APTRA was titled "Judicial Review of Contested Cases," and subsection (a) thereof provided: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case *is entitled to judicial review* under this Act. This section is cumulative of other means of redress provided by statute." *Id.* § 19(a), at 146 (emphasis added).

In 1993, the APTRA was codified in the Government Code. The part of the APTRA concerning the Texas Register was transferred to Chapter 2002. The remainder of the APTRA was transferred to Chapter 2001 and designated the Administrative Procedure Act (APA). Section 19(a) of the APTRA was divided and placed in two different sections of the APA. Subchapter

G of the APA, titled "Contested Cases: Judicial Review," contains sections 2001.171 through 2001.178. Section 2001.171 provides: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case *is entitled to judicial review* under this chapter." TEX. GOV'T CODE § 2001.171 (emphasis added). And section 2001.178 provides: "This subchapter is cumulative of other means of redress provided by statute." *Id.* § 2001.178.

The Third Court of Appeals has "repeatedly held that [section 2001.171 of the APA] is a procedural provision that does not confer independent subject matter jurisdiction on the district court." *Eldercare Props., Inc. v. Tex. Dep't of Human Servs.,* 63 S.W.3d 551, 557 (Tex.App.-Austin 2001, pet. denied). For example, in *Employees Retirement System v. Foy,* 896 S.W.2d 314, 316 (Tex.App.-Austin 1995, writ denied), the court stated: "Notwithstanding the generality of section 2001.171, the legislature intended the judicial-review provisions of the APA to be procedural only; they do not create a right to judicial review where the right does not exist by reason of another statute specifically granting the right." In contrast, before the provision was codified, the Tenth and Fourteenth Courts of Appeals concluded that section 19(a) of the APTRA provided a right to judicial review. *See Tex. Health Facilities Comm'n v. W. Tex. Home Health Agency,* 588 S.W.2d 655, 657 (Tex. Civ.App.-Waco 1979, no writ); *Moore v. Tex. Employment Comm'n,* 565 S.W.2d 246, 247 (Tex.Civ.App.-Houston [14th Dist.] 1977, no writ).

■ In this case, a divided panel of the First Court of Appeals held that section 2001.171 of the APA provides a right to judicial review. 81 S.W.3d 470. We granted review to resolve the conflict among the courts of appeals regarding the proper interpretation of section 2001.171. Based on its plain language, we conclude that section 2001.171 provides an independent right to judicial review of a contested-case decision when the agency's enabling statute neither specifically authorizes nor prohibits judicial review of the decision.

**II**

On April 28, 1999, Mega Child Care, Inc. filed suit against the Texas Department of Protective and Regulatory Services (TDPRS), a state agency subject to the APA. The petition for judicial review, which was filed in a Harris County district court, stated:

On or about July 22, 1997, the agency notified Plaintiff to appear before it and show cause why Plaintiff's license to operate a Day Care Facility should not be revoked as a result of alleged failure to comply with minimum standards.

After a hearing on November 19, 1998, the agency made its decision adverse to Plaintiff and refused to grant a timely motion for rehearing. All conditions precedent to Plaintiff's right of judicial review of agency's decision having been performed or occurred, Plaintiff is entitled to trial de novo under the authority of Section 19(c) of Article 6252–13a, Revised Civil Statutes of Texas.

On May 24, 1999, the TDPRS filed Defendant's Plea to the Jurisdiction, Special Exceptions, and Original Answer. Part I of the pleading, titled "Plea to the Jurisdiction," stated:

Defendant asserts that this court should dismiss this suit because it lacks subject matter jurisdiction to review the final decision of Defendant which revoked Plaintiff's license to operate a day care due to numerous noncompliances with the Minimum Standards for Day Care Facilities. A review of the regulations

and the statutes that govern this cause reveals that there has been no provision made by the legislature for judicial review of the decision of the Department after a full evidentiary hearing has been held before an administrative law judge, who sits as the sole fact-finder.

Notwithstanding the generality of section 2001.171 of the Administrative Procedure Act (APA), formerly Article 6252–13a, § 19(a) of the Texas Revised Civil Statutes, the legislature intended the judicial review provisions of the APA to be procedural only. They did not create a right to review where the right does not exist by another statute that specifically grants that right.[citation to Third Court of Appeals's precedent].

For the foregoing reasons, this court has no subject matter jurisdiction over Plaintiff's Original Petition which seeks judicial review of the Department's decision dated July 23, 1998. Accordingly, Plaintiff's petition must be dismissed for want of jurisdiction.

Part II of the pleading contained a general denial. In part III, the TDPRS asserted "its affirmative defense of sovereign immunity." Part IV set forth special exceptions.[1]

On August 30, 1999, the trial court granted the TDPRS's plea to the jurisdiction and dismissed the suit. On October 6, 1999, the trial court denied Mega Child Care's motion for new trial. No hearing was held on either the plea or the motion. On November 3, 1999, Mega Child Care filed a notice of appeal.

In the court of appeals, Mega Child Care asserted for the first time the additional argument that the administrative decision adversely affected a vested property right and, therefore, it had an inherent right to judicial review. The TDPRS, in its court of appeals brief, asserted that "no statute authorizes judicial review of the Department's decision or SOAH's order" and that Mega Child Care "failed to raise its constitutional argument in the court below, therefore it has waived its claim that the Department's decision violated its due process rights." The TDPRS did not raise or otherwise discuss sovereign immunity in its court of appeals brief.

On June 28, 2002, the court of appeals reversed and remanded, holding that *Mega Child Care* had "exhausted all available administrative remedies and was entitled to judicial review" under section 2001.171 of the APA. 81 S.W.3d at 473. The majority did not discuss the Third Court of Appeals's precedent construing section 2001.171. The dissent asserted that the court should follow the Third Court of Appeals's precedent and hold that Mega Child Care had no statutory right to judicial review. *Id.* at 477. In addition, the dissent agreed with the TDPRS that Mega Child Care had waived its constitutional claim. *Id.* at 477–78. Accordingly, the dissent would have affirmed the trial court's judgment. Neither the majority nor the dissent discussed the doctrine of sovereign immunity.

In its petition for review, the TDPRS asserted that section 2001.171 of the APA neither grants "an aggrieved party a substantive right to judicial review of an agency contested case order" nor waives sovereign immunity. In addition, the TDPRS argued that because section 19(a) of the APTRA was not substantively amended in 1993 when it was codified, "the Legislature

---

**1.** In its pleading, the TDPRS did not raise or otherwise discuss Mega Child Care's failure to comply with section 2001.176(b)(1) of the APA. *See* Tex. Gov't Code § 2001.176(b) ("Unless otherwise provided by statute: (1) the petition must be filed in a Travis County district court; . . . .").

has accepted the Third Court of Appeals' construction."[2] Finally, the TDPRS contended that Mega Child Care had "waived any claim of an inherent right to judicial review by not raising the issue in the trial court." In its response, Mega Child Care asserted only that it has a statutory right to judicial review under section 2001.171.

In its brief on the merits, the TDPRS generally reiterated its previous arguments regarding section 2001.171 of the APA.[3] Relying on the Third Court of Appeals's precedent, the TDPRS continued to assert that "[t]he Legislature has not expressed a clear intent to waive immunity and provide a substantive right for judicial review in the APA." In addition, the TDPRS asserted for the first time that the intent of its 1997 sunset review legislation was to prohibit judicial review of administrative decisions revoking a child-care facility license.

In the statement-of-the-case section of its brief on the merits, Mega Child Care asserted that "it has a statutory and constitutional right to judicial review." However, the three-page argument section of the brief did not contain any discussion regarding the asserted constitutional right to judicial review. In addition, the brief failed to address the issue regarding the intent of the TDPRS's 1997 sunset review legislation.

After the parties filed briefs on the merits, the Court received two amicus curiae briefs. The Texas Licensed Child Care Association (TLCCA), a statewide organization of child-care businesses, submitted a substantial brief in support of Mega Child Care. The TLCCA asserted that "[t]he plain words suggest that [section 2001.171 of the APA] does more than establish a procedure for judicial review; the section creates the right of judicial review for those who qualify."[4] In addition, the TLCCA contended that "there is no legislative history from the 1997 legislative session revealing any intention to eliminate judicial review of a child care license revocation." Ron Beal, author of *Texas Administrative Practice and Procedure*,[5] submitted a four-page letter brief in support of Mega Child Care. He joined the TLCCA's brief but wrote separately to emphasize his view that "the legal theory and analysis of the Austin Court of Appeals that established the doctrine within that circuit that section 2001.171 did not independently confer subject matter jurisdiction on the district court was and is erroneous."

Both the TDPRS and the TLCCA submitted post-submission briefs. In its brief, the TDPRS reasserted its legislative acceptance argument, argued that section 2001.171 of the APA "can fairly be read to set forth necessary—but not sufficient—conditions that must be satisfied to qualify for any judicial review that the Legislature has provided in the enabling statute," and contended that the court decisions from states with similar judicial review provisions were "mixed." In its brief, the TLCCA asserted:

> contended the notes reflect that code drafters relied on the plain meaning of section 2001.171 when deleting, as redundant and therefore unnecessary, provisions contained in the underlying source law that specifically authorized judicial review.

---

2. The TDPRS did not make this argument below, and therefore it was not addressed in the court of appeals's opinions.

3. However, the TDPRS did not discuss its legislative acceptance argument in its brief on the merits.

4. In support thereof, the TLCCA cited numerous revisor's notes that accompanied proposed legislative codifications. The TLCCA

5. RONALD L. BEAL, TEXAS ADMINISTRATIVE PRACTICE AND PROCEDURE (2000).

Of the 25 states that have the same APA language as the Texas APA section 2001.171—that a party to a contested case is "entitled to judicial review"—the Austin Court of Appeals is the only state appellate court, in Texas or elsewhere, that interprets that language to be merely procedural and as being insufficient to confer jurisdiction on the court unless review is authorized under another statutory provision.

In this Court, the TDPRS concedes that Mega Child Care exhausted all available administrative remedies and that Mega Child Care is aggrieved by a final decision in a contested case. However, the TDPRS asserts that Mega Child Care is not entitled to judicial review of the administrative decision to revoke its child-care facility license. Based on the following analysis, we disagree.

### III

Several longstanding rules of statutory interpretation govern our resolution of this case.

■ When interpreting a statutory provision, a court must ascertain and effectuate the legislative intent. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex.2000) ("The primary rule in statutory interpretation is that a court must give effect to legislative intent."); *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974) ("[I]t is the duty of the court to ascertain the legislative intent."); *Magnolia Petroleum Co. v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934 (1935) ("[T]he dominant rule to be observed is to give effect to the intention of the Legislature."); *Mills County v. Lampasas County,* 90 Tex. 603, 40 S.W. 403, 404 (1897) ("Strictly speaking, there is but one rule of construction, and that is that the legislative intent must govern. All other canons of interpretation, so called, are but grounds of argument re-

sorted to for the purpose of ascertaining the true meaning of the law.").

■ If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it. *See Grapevine Excavation, Inc. v. Md. Lloyds,* 35 S.W.3d 1, 5 (Tex. 2000) (Once the Texas Supreme Court and courts of appeals "construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."); *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 248 (Tex. 1991) (" '[A] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction.' This rule is only applicable where there has been an affirmative longstanding administrative policy.") (quoting *Humble Oil & Ref. Co. v. Calvert,* 414 S.W.2d 172, 180 (Tex.1967)); *Tex. Employers' Ins. Ass'n v. Holmes,* 145 Tex. 158, 196 S.W.2d 390, 395 (1946) ("There is another well-settled rule to guide us in the construction of a statute which is uncertain and ambiguous ...: 'Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction.' "); *Tex. Fid. & Bonding Co. v. City of Austin,* 112 Tex. 229, 246 S.W. 1026, 1029 (1922) ("It is an elementary rule of construction that where, after a statute has been construed by the highest court of the state, the Legislature re-enacts the statute, whether by the adoption of Revised Statutes or by amendment, the act of the Legislature carries with it the construction previously placed upon the law by the court.").

■ If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results. *See Tune v. Tex. Dep't of Pub. Safety,* 23 S.W.3d 358, 363 (Tex.2000) ("We must enforce the plain meaning of an unambiguous statute."); *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985) ("Unless a statute is ambiguous, we must follow the clear language of the statute."); *Brazos River Auth. v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 109 n. 3 (1962) ("[O]perating as we are under a strict theoretical division of governmental powers, it would take a bit of doing on the part of the judiciary to say, in the absence of ambiguous and uncertain statement or patent and manifest absurdity, that the Legislature intended something different from the clear import of the words chosen by it. . . ."); *Gilmore v. Waples,* 108 Tex. 167, 188 S.W. 1037, 1039 (1916) (The literal meaning of a statute may be disregarded "only where it is perfectly plain that the literal sense works an absurdity or manifest injustice.").

## IV

An extensive review of the three model state administrative procedure acts, the Texas Administrative Procedure Act, and the TDPRS's 1997 sunset review legislation is necessary to resolve this case.

In 1946, the Commissioners on Uniform State Laws issued the first Model State Administrative Procedure Act. MODEL STATE ADMIN. PROCEDURE ACT, 9C U.L.A. 179 (1957). Because it governed rulemaking, adjudication, and judicial review, the 1946 model act was considered "comprehensive." Arthur Earl Bonfield, *The Federal APA and State Administrative Law,* 72 Va. L.Rev. 297, 303 (1986). Section 12 of the 1946 model act was titled "Judicial Review of Contested Cases," and subsection (1) thereof provided: "Any person aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, *is entitled to judicial review* thereof under this act [but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief or trial de novo, provided by law]." MODEL STATE ADMIN. PROCEDURE ACT § 12(1), 9C U.L.A. 179, 183 (1957) (emphasis added). Section 12(1) has been interpreted as granting an independent right to judicial review by both the courts [6] and commentators.[7] At least ten states enacted comprehensive ad-

---

**6.** *See, e.g., Bay State Harness Horse Racing & Breeding Ass'n v. State Racing Comm'n,* 342 Mass. 694, 175 N.E.2d 244, 249 (1961) ("Judicial review may be obtained under [Massachusetts APA—enacted in 1954] by any person aggrieved by a final decision of an agency 'in an adjudicatory proceeding.' "); *Md.-Nat'l Capital Park & Planning Comm'n v. Friendship Heights,* 57 Md.App. 69, 468 A.2d 1353, 1358 (1984) (Section 255(a) of the Maryland APA "reads: '(a) *Right to review*—Any party aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under this subtitle.' . . . Once the definitional standard of a contested case is met, there is no need or requirement for separate jurisdictional authority; entitlement to

review is provided by Section 255 of the Act.") (emphasis in original).

**7.** *See, e.g.,* William J. Curran & Albert M. Sacks, *The Massachusetts Administrative Procedure Act,* 37 B.U.L. REV. 70, 93 (1957) (The Massachusetts APA "resolves legislative silence in favor of judicial review."); Bernard Schwartz, *The Model State Administrative Procedure Act—Analysis and Critique,* 7 RUTGERS L.REV. 431, 456 (1953) (" 'Any person,' reads section 12(1) of the Act, 'aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof.' In this language, there is a legislative restatement of the principle of *Stark v. Wickard* [321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944)], that

ministrative procedure acts based in whole or part on the 1946 model act.

In 1951, twenty-four years before the Legislature enacted a comprehensive administrative procedure act, this Court addressed the availability of judicial review of state administrative action:

> When the legislature creates an administrative agency, the legislature may prescribe rules and regulations governing the administrative body and the method by which the rights determined by such body shall be enforced. Judicial review of administrative action may be specifically provided or specifically denied by the legislature.... Or the legislature may simply be silent upon the subject. Although the legislature specifically denies judicial review, decisions of an administrative body may be attacked in court if they violate some provision of the State or Federal Constitution. But all other decisions of such an administrative body which do not affect vested property rights or otherwise violate some constitutional provision are valid, and the mere fact that the legislature has denied judicial review does not invalidate them. The corollary of this proposition is that the courts should recognize an inherent right of appeal from an administrative body created by an act silent on the question of appeal *only* where the administrative action complained of violates a constitutional provision.

*City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788, 790 (1951) (citations omitted) (emphasis in original).

In 1953, a proposed Texas administrative procedure act was published in the state bar journal. *Administrative Procedure Act*, 16 Tex. B.J. 14 (1953). The comprehensive act was drafted by the State Bar Committee on Administrative Procedure. Article 42–23 of the act, titled "Judicial Review.—Orders," provided:

> (a) Any person adversely affected by a decision of an agency may seek judicial review of the decision by filing suit against the agency in the District Court of Travis County, or of any county in which venue properly lies, for the purpose of setting aside the order complained of, whether affirmative or negative in form,....
>
> ....
>
> (d) Scope of review of agency decisions shall be in accordance with applicable statutes. Where statutes do not provide for scope of review the court shall determine whether the statute or regulation pursuant to which the agency acted or the order issued thereunder is unconstitutional, whether the decision is in excess of the statutory authority or jurisdiction of the agency, whether the decision was made pursuant to unlawful procedure or is affected by other error of law affecting substantial rights of the petitioner, and whether the decision is arbitrary, capricious or unreasonable.

*Id.* at 48–49.

In 1955, an article regarding the state bar's proposed act was published in the Texas Law Review. George W. Terry, Comment, *The Proposed Texas Administrative Procedure Act*, 33 Texas L.Rev. 499 (1955). After noting that the act apparently provided an independent right to judicial review of both rules and orders, the author asked: "[I]s it wise to make judicial review a matter of right in all cases covered by this general administrative procedure act even though the legislature, in

review is available even in the absence of other express statutory provision therefor, of the requirement of 'standing' on the part of the person seeking review, and of the requirement of ripeness for review ....") (emphasis added).

creating the agency, did not provide for review?" *Id.* at 508. In the conclusion, he stated:

> The Proposed Act presents no great departure from the Model Act or the administrative procedure acts of other states....
>
> However, the Proposed Act seems faulty in a few particulars discussed above: namely, (1) it fails to ensure effective notice of rule-making; (2) *it confers a right to judicial review in both rulemaking and adjudication where previously none was recognized;* (3) it leaves in doubt the question whether a petition for reconsideration of an adjudicative decision must precede a petition for judicial review. Perhaps these deficiencies will be corrected before the Proposed Act becomes law.

*Id.* at 516 (emphasis added).

In 1957, the Texas Civil Judicial Council[8] published a report on administrative procedure acts, with "particular emphasis upon the proposed Texas Act, the Model Act, and the Federal Act." TEXAS CIVIL JUDICIAL COUNCIL, ADMINISTRATIVE PROCEDURE LAWS IN THE UNITED STATES: A COMPARATIVE STUDY (1957) (available at State Law Library).The twenty-nine page report was addressed to the Legislature, Governor, and Supreme Court. In the section concerning judicial review, the report stated:

> All but one of the procedure laws have provided for judicial review of administrative proceedings. All of the acts with these provisions make them applicable, as does the Model Act, to administrative decisions in "contested cases" (or whatever equivalent term is used in the particular act), but five are broader in their

application in that they specifically or impliedly permit judicial review to be extended to rules and regulations as well as administrative adjudication. These five are the statutes of California, Ohio, Massachusetts, the Proposed Texas Act and the Federal Act.

> ....

> The Federal Act assures the right of judicial review to any person suffering from legal wrong or adversely affected by agency action, except where federal statutes preclude it and where agency action is by law committed to agency discretion.

> ....

> *Under the Proposed Texas Act, judicial review is authorized for both regulations and orders;* it may be sought by any person adversely affected by agency action.

*Id.* at 21–23 (emphasis added). In addition, the report quoted in full the conclusion of the 1955 Texas Law Review article, including the author's concern that the proposed act "confers a right to judicial review in both rule-making and adjudication where previously none was recognized." *Id.* at 29.

In 1961, the Commissioners on Uniform State Laws issued a revised Model State Administrative Procedure Act. Model State Admin. Procedure Act(1961), 15 U.L.A. 184 (2000). Section 15 of the 1961 model act was titled "Judicial Review of Contested Cases," and subsection (a) thereof provided:

> A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case *is entitled to*

---

**8.** In 1957, council members included the Chief Justice of the Supreme Court, two court of appeals justices, two district judges, and the chairmen of the Senate and House Civil Judiciary Committees. *See* Act of Feb. 12, 1953, 53d Leg., R.S., ch. 6, 1953 Tex. Gen. Laws 12.

*judicial review* under this Act. This Section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

MODEL STATE ADMIN. PROCEDURE ACT (1961) § 15(a), 15A U.L.A. 11 (2000) (emphasis added). The official comment to section 15 states:

An important question that arises under subsection (a) is whether or not the review provisions should be made exclusive and all other review provisions on the statute books should be repealed. Each state will have to deal with this matter as the local circumstances dictate. On the one hand, if there is but one mode and scope of review, the state procedural structure is greatly simplified. On the other hand, local considerations, including practical considerations connected with obtaining adoption of the Model Act, may indicate or even require the retention, at least for the moment, of the pre-existing methods of judicial review.

*Id.* § 15 cmt., at 13. A majority of states, including Texas, has enacted comprehensive administrative procedure acts based in whole or part on either the original 1946 model act or the 1961 revision.

In 1963, Professor Bloomenthal of the University of Wyoming College of Law authored an article on the 1961 model act. Harold S. Bloomenthal, *The Revised Model State Administrative Procedure Act—Reform or Retrogression?*, 1963 Duke L.J. 593. Discussing the availability of judicial review of administrative action in general, he stated:

Many statutes relating to administrative agencies and action expressly provide that specified types of administrative decisions are subject to judicial review. Generally, these review provisions relate to administrative adjudication (contested cases), infrequently to rule making, and occasionally to executive action. However, a number of statutes in some states relating to agencies with powers of adjudication do not include review provisions. On the federal level there appears to be a reasonably well developed doctrine that unless a statute affirmatively precludes judicial review, there is a common law right of judicial review of administrative action. The decisions on the state level are inconclusive. *The Model Act as revised expressly provides that final decisions in all contested cases are reviewable by the courts and that the validity of all administrative rules and regulations may be determined in an action for a declaratory judgment.* The revised Model Act contains no provision for reviewing executive action, that is, administrative action that can be classified neither as adjudication nor rule making.

*Id.* at 622–23 (footnotes omitted) (emphasis added).

In 1965, Professor Cooper of The University of Michigan Law School authored an important treatise on state administrative law. FRANK E. COOPER, STATE ADMINISTRATIVE LAW (1965). Cooper had been intimately involved with the 1961 revision of the 1946 model act. In his treatise, Cooper stated:

*The Revised Model State Act grants a right of judicial review of "a final decision" in a contested case and of certain preliminary orders .... Many state statutes grant a right of appeal only from final orders. Even in states not having a specific statutory requirement*

to this effect, the courts ordinarily hold that only final agency orders are reviewable. As yet, only a small number of states have adopted statutes providing for review of preliminary orders, where necessary to avoid an injustice.

2 *id.* at 588 (citations omitted) (emphasis added).

In 1967, in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the United States Supreme Court reaffirmed the presumption that judicial review of federal administrative action is available. At that time, the Federal Administrative Procedure Act provided: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, *is entitled to judicial review* thereof." 5 U.S.C. § 702 (Supp. III 1964) (emphasis added). With regard to the availability of judicial review, the Supreme Court stated:

The first question we consider is whether Congress by the Federal Food, Drug, and Cosmetic Act intended to forbid pre-enforcement review of this sort of regulation promulgated by the Commissioner. The question is phrased in terms of "prohibition" rather than "authorization" because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress. Early cases in which this type of judicial review was entertained, [omitted citations include *Stark v. Wickard,* 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944)], have been reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review to one "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," so long as no statute precludes such relief or the action is not one committed by law to agency discretion.

*Abbott Labs.*, 387 U.S. at 139–40, 87 S.Ct. 1507 (citations omitted); *see also Hayes Int'l Corp. v. McLucas,* 509 F.2d 247, 259 (5th Cir.1975) ("Clearly the absence of statutory language expressly authorizing judicial review is insufficient to offset the presumption that [federal] administrative action is reviewable. 'Indeed, judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated.' However, '[a] clear command of the statute will preclude review; and such a command of the statute may be inferred from its purpose.' ") (quoting *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970)).

In 1971, legislation providing for a comprehensive Texas administrative procedure act was filed in both the Senate [9] and the House. *See* Tex. S.B. 16, 62d Leg., R.S. (1971); Tex. H.B. 761, 62d Leg., R.S. (1971) (available at State Archives). Section 17(a) of both the Senate and House bills provided: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case as defined in Section 3(2) *is entitled to judicial review* under this Act. A preliminary, procedural, or intermediate agen-

---

9. A bill analysis of the Senate legislation stated: "The bill is intended to provide full and uniform procedure for state administrative agencies. It was prepared by the Committee on Administrative Law of the State Bar of Texas, using as a basis, the 1961 revised Model State Administrative Procedure Act, a Uniform Act but changing it in some respects and adapting it to Texas practice." SEN. COMM. ON JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 16, 62d Leg., R.S. (1971) (available at State Archives).

cy action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." Tex. S.B. 16 § 17(a); Tex. H.B. 761 § 17(a) (emphasis added). Neither bill was passed out of legislative committee. In 1973, similar legislation was introduced in both houses containing identical section 17(a) language. *See* Tex. S.B. 81, 63d Leg., R.S. (1973); Tex. H.B. 248, 63d Leg., R.S. (1973) (available at Legislative Reference Library). The Senate passed its bill, but both the Senate bill and the House bill died in a House committee.

In 1975, legislation was again filed that provided for a comprehensive administrative procedure act. *See* Tex. S.B. 41, 64th Leg., R.S. (1975); Tex. H.B. 531, 64th Leg., R.S. (1975); Tex. H.B. 1106, 64th Leg., R.S. (1975) (available at Legislative Reference Library). Senate Bill 41, as amended, was enacted during that legislative session. Section 17(a) of Senate Bill 41, as introduced, provided: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case as defined in Section 3(2) *is entitled to judicial review* under this Act. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." Tex. S.B. 41 (emphasis added).

On January 30th, the introduced version of Senate Bill 41 was considered in committee. *See Hearings on Tex. S.B. 41 Before the Senate Intergovernmental Relations Comm.*, 64th Leg., R.S. (Jan. 30, 1975) (transcript available at Legislative Reference Library). David Young, chief counsel for the Texas Department of Public Welfare (DPW), was one of the many agency representatives who testified at the hearing.

Young advised the Senate committee that certain contested-case decisions of the DPW were not currently subject to judicial review and that, in his view, the proposed act would both waive sovereign immunity and authorize judicial review of those contested-case decisions. *Id.* at 12–13. He further stated that "because we have about a volume of some 800 hearings a month in the Aid to Dependent Children program we can expect a very heavy influx of litigation on what amount[s] to relatively small amounts of money." *Id.* at 13. A committee member immediately raised the question of how many new district courts would have to be created to handle those appeals. Committee members and Young then discussed solving the problem by exempting the relevant DPW contested-case decisions from the act. *Id.* at 13–15. No committee member or witness contested Young's assertion that Senate Bill 41 would provide a right to judicial review.

On February 5th, the following floor amendment to Senate Bill 41 was adopted: "19. EXCEPTIONS. The provisions of this Act shall not apply to the financial and medical assistance and service programs of the State Department of Public Welfare." S.J. OF TEX., 64th Leg., R.S. 184, 191 (1975). The substance of the exemption was retained throughout the legislative process and is currently codified in section 2001.223 of the APA. *See* TEX. GOV'T CODE § 2001.223.

The Administrative Procedure and Texas Register Act [10] became effective on Jan-

---

**10.** Senate Bill 41's final legislative title read: "An Act providing standards for state administrative practices and procedures; providing procedures for adoption of rules by state agencies; providing for the creation of a state register and its contents; *providing for review of state agency proceedings; providing for declaratory judgments and procedures for judicial review* ...." APTRA, 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136 (emphasis added).

uary 1, 1976. APTRA, 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136, 148. Section 3(2) of the APTRA provided: " 'Contested case' means a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing." *Id.* § 3(2), at 137. And section 12 provided:

The validity or applicability of any rule, including an emergency rule adopted under Section 5(d) of this Act, may be determined in an action for declaratory judgment in a district court of Travis County, and not elsewhere, if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.

*Id.* § 12, at 141.

Section 19 of the APTRA provided:

(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case *is entitled to judicial review* under this Act. This section is cumulative of other means of redress provided by statute.
. . . .
(e) The scope of judicial review of agency decisions is as provided by the law under which review is sought. Where the law authorizes appeal by trial de novo, the courts shall try the case in the manner applicable to other civil suits in this state and as though there had been no intervening agency action or decision. Where the law authorizes review under the substantial evidence rule, or where the law does not define the scope of judicial review, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discre-

tion but may affirm the decision of the agency in whole or in part and shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* § 19, at 146–47 (emphasis added). Section 22 contained a general repealer. *Id.* § 22, at 148. The APTRA did not specifically repeal or amend any pre-existing statutory judicial review provisions.

In 1976, Professor Hamilton of The University of Texas School of Law co-authored an article regarding the APTRA. Robert W. Hamilton & J.J. Jewett, III, *The Administrative Procedure and Texas Register Act: Contested Cases and Judicial Review*, 54 Texas L.Rev. 285 (1976). The article did not discuss whether section 19(a) of the APTRA provided an independent right to judicial review when an agency enabling statute neither specifically authorized nor prohibited judicial review. However, in the following passage, the authors assumed that section 19(a) provided an independent right to judicial review:

It is important that in the future the legislature clearly specify the desired manner of review. Indeed, more or less standardized language would be desirable to ensure that no ambiguity exists

as to the intended manner of review. We have examined the legislative work-product of the sixty-fourth Texas Legislature, the session that enacted the AP-TRA, and by our unofficial headcount the legislature enacted or re-enacted legislation calling definitively for "trial de novo" in only three instances. In contrast, the language of nine statutes, including two recodifications, clearly indicates that the substantial evidence rule is applicable. *In at least four instances involving obvious contested cases there is no specific judicial review provision. Under section 19, appeals in these cases will also be governed by the substantial evidence rule.* Three statutes, however, include provisions relating to judicial review apparently without regard to the distinctions set forth in section 19.

*Id.* at 308–09 (footnotes omitted) (emphasis added).

In the footnote following the first sentence emphasized above, the authors cited four statutes, one of which was "Auctioneers—Regulation, TEX.REV.CIV. STAT. ANN. art. 8700 (Supp.1975)." *Id.* at 309 n. 110. The statute was comprehensive, providing inter alia for the denial, suspension, and revocation of the required auctioneer's license. *See* Act of May 21, 1975, 64th Leg., R.S., ch. 320, 1975 Tex. Gen. Laws 827, 829. It was silent with regard to the availability or scope of judicial review. Nonetheless, Hamilton and Jewett assumed that judicial review was available under section 19(a) of the APTRA and concluded that substantial evidence was the applicable scope of review.

In 1977, the Legislature enacted the Alcoholic Beverage Code, a nonsubstantive revision. Alcoholic Beverage Code, 65th Leg., R.S., ch. 194, 1977 Tex. Gen. Laws 391. The revisor's notes that accompanied the proposed codification reflect that the code drafters believed section 19(a) of

the APTRA guaranteed a right to judicial review. Section 11.67 of the Alcoholic Beverage Code governs judicial review of administrative orders regarding liquor licenses, and its revisor's note stated:

> The revised law omits the provision in the source law denying appeal from certain orders because this provision was impliedly repealed by Section 19 of the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes).

TEX. ALCO. BEV.CODE ANN. § 11.67 revisor's note (Vernon 1995). Similarly, section 61.81 governs judicial review of administrative orders regarding beer licenses and its revisor's note stated:

> The provision in the source law denying appeal in certain circumstances is omitted since it conflicts with Subsection (a), Section 19 of the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes). That section provides, "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act."

*Id.* § 61.81 revisor's note.

In 1978, this Court decided *Southwestern Bell Telephone Co. v. Public Utility Commission,* 571 S.W.2d 503 (Tex.1978). Because the Public Utility Commission's enabling statute specifically authorized judicial review of the commission's orders, the question of whether section 19(a) provided an independent right to judicial review was not raised. However, the Court resolved an important question regarding the remainder of section 19 and expressed its view of the Legislature's intent in enacting the APTRA. After setting out the entire text of section 19, the Court stated:

> A complete reading of the section reveals that in contested cases there are

now provided only two types of review—pure trial de novo or review confined to the agency record. We think the court of appeals fails to recognize the far-reaching changes intended by the adoption of the Administrative Procedure Act.

*Id.* at 508.

In 1977 and 1979, three courts of appeals reached different conclusions regarding whether section 19(a) of the APTRA provided an independent right to judicial review when the agency enabling statute neither specifically authorized nor prohibited judicial review. In both *Moore v. Texas Employment Commission,* 565 S.W.2d 246, 247 (Tex.Civ.App.-Houston [14th Dist.] 1977, no writ) and *Texas Health Facilities Commission v. West Texas Home Health Agency,* 588 S.W.2d 655, 657 (Tex.Civ.App.-Waco 1979, no writ), the courts concluded, with limited analysis, that section 19(a) did provide an independent right to judicial review.

In *Motorola, Inc. v. Bullock,* 586 S.W.2d 706, 708–09 (Tex.Civ.App.-Austin 1979, no writ), the Third Court of Appeals concluded that section 19(a) of the APTRA did not provide an independent right to judicial review, stating:

> The Legislature with laudable care sought to avoid conflict between the general procedure outlined in section 19 and any other statute or law, with final specification [in section 19(e)] that the scope of judicial review of agency decisions would follow "the law under which review is sought." Nowhere do we find an attempt to grant a substantive right not provided by other statutes or laws.

*Id.* at 709. However, the court failed to quote, analyze the plain meaning of, or otherwise directly address the first sentence of section 19(a).[11]

In 1981, in *Hooks v. Texas Department of Water Resources,* 611 S.W.2d 417 (Tex. 1981), this Court addressed another important question regarding the APTRA: the interaction between section 19(a) and agency enabling statutes that specifically authorize judicial review.[12] Overturning the Third Court of Appeals's judgment, the Supreme Court stated:

> Section 19(a) of the APA provides that "[a] person who has exhausted all ad-

---

**11.** In addition, the Third Court of Appeals did not discuss decisions from states with similar APA language. *See, e.g., Buras v. Bd. of Trs. of Police Pension Fund,* 367 So.2d 849, 851 (La.1979) (judicial review available under state APA, which incorporated first sentence of section 15(a) of 1961 model act, even if appeal not authorized by agency enabling statute); *Rybinski v. State Employees' Ret. Comm'n,* 173 Conn. 462, 378 A.2d 547, 553 (1977) (same); *Minn. Pub. Interest Research Group v. Minn. Envtl. Quality Council,* 306 Minn. 370, 237 N.W.2d 375, 382 (1975) (same); *Martin v. Harrah Indep.Sch. Dist.,* 543 P.2d 1370, 1375 (Okla.1975) (same); *Elk Point Indep.Sch. Dist. No. 3 v. State Comm'n on Elementary & Secondary Educ.,* 85 S.D. 600, 187 N.W.2d 666, 670 (1971) (same).

**12.** Whether section 19(a) of the APTRA provided an independent right to judicial review was not before the Court. However, in order to place a relevant legal argument in context, the Attorney General stated: "Before enactment of the APA, if the substantive legislation was silent on the ability to obtain judicial review, that right was not implied except as necessary to afford due process and protect constitutional rights.... Thus, § 19(a) would provide a right to judicial review, not previously existing under substantive legislation, when a proceeding qualifies as a 'contested case' and when a party is 'aggrieved' by the decision. Given these two hurdles to overcome, unless subsequent decisions construe 'contested case' very broadly, the additional review provided by § 19(a) will be quite limited." Post Argument Brief for Texas Department of Water Resources at 6, *Hooks v. Tex. Dep't of Water Res.,* 611 S.W.2d 417 (Tex. 1981) (cause no. B–9733) (filed Jan. 29, 1981) (available at State Archives) (citations omitted).

ministrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act." It further provides "[t]his section is cumulative of other means of redress available [sic] by statute." *Id.* The Hooks appealed the order granting the waste discharge permit pursuant to the judicial review provisions of the Texas Water Code. Section 5.351(a), Tex. Water Code Ann., provides that "[a] person affected by a ruling, order, decision, or other act of the department may file a petition to review, set aside, modify, or suspend the act of the department." *The judicial review provisions of the APA and the Water Code should be read in conjunction and harmony with each other.* The terms "aggrieved" and "affected" are synonymous and both relate to the requirement that a person show a "justiciable interest."

*Id.* at 419 (citation omitted) (emphasis added); *see also Ingle v. Bullock,* 578 S.W.2d 193, 193–94 (Tex.Civ.App.-Austin 1979, writ ref'd) (concluding that a person seeking judicial review under section 19(a) of the APTRA must satisfy additional prerequisites for judicial review contained in an agency enabling statute—in this case, prepayment of a disputed tax assessment).

Also in 1981, the Commissioners on Uniform State Laws issued the third Model State Administrative Procedure Act. MODEL STATE ADMIN. PROCEDURE ACT (1981), 15 U.L.A. 1 (2000). Section 5–102 of the 1981 model act is titled "Final Agency Action Reviewable," and subsection (a) thereof provides:

> A person who qualifies under this Act regarding (i) standing (Section 5–106), (ii) exhaustion of administrative remedies (Section 5–107), and (iii) time for filing the petition for review (Section 5–108), and other applicable provisions of law regarding bond, compliance, and other pre-conditions *is entitled to judicial review* of final agency action, whether or not the person has sought judicial review of any related non-final agency action.

*Id.* § 5–102(a), at 119 (emphasis added). The official comment to section 5–102 states: "Subsection (a) ties together the threshold requirements for obtaining judicial review of final agency action, and guarantees the right to judicial review if these requirements are met." *Id.* § 5–102 cmt., at 119. Only three states have adopted the 1981 model act in whole or part.

Certain statements contained in Third Court of Appeals's opinions issued after *Motorola, Inc.* appear inconsistent with the holding in that case. For example, in *Bank of Woodson v. Stewart,* 632 S.W.2d 950 (Tex.App.-Austin 1982), *dism'd as moot,* 641 S.W.2d 230 (Tex.1982), the court of appeals, in determining the trial court's jurisdiction, stated:

> [T]he right to challenge administrative agency actions, by an original action in district court, on the basis that such actions unconstitutionally deprive the plaintiff of a vested property right, is a right to judicial review distinctly different from the right to such review which is given in the Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ. Stat. Ann. art. 6252–13a, §§ 12, 19. This right is equally distinct and different from the right to judicial review conferred in numerous other statutes which delegate portions of the State's police power to various administrative agencies, prescribe how and on what conditions the delegated power may be exercised, and provide for judicial review of specific instances where the power is exercised, frequently by

suit in a district court of Travis County, Texas.

*Id.* at 956–57 (footnote omitted). The footnote following the first sentence quoted above stated:

APTRA §§ 12 and 19 authorize judicial review of two different kinds of administrative action: rule making and adjudications. In either case, judicial review is made exclusive in the district courts of Travis County. Section 12 empowers the Travis County district courts to hear and determine by declaratory judgment the plaintiff's allegations that an agency rule interferes with or impairs a plaintiff's legal rights . . . .

Section 19 empowers the Travis County district courts to review for errors of law the final order and the proceedings in any "contested case" adjudicated in an agency in its exercise of that portion of the State police power assigned to the agency and delegated to it by statute.

*Id.* at 956 n. 4.

In 1986, on motion for rehearing, this Court issued a per curiam opinion in *Employees Retirement System v. Blount,* 709 S.W.2d 646 (Tex.1986). The case is important because review of the Third Court of Appeals's opinion, the parties' briefing, the legislative action taken while the case was pending, and this Court's opinion reveals a common understanding at that time among the Attorney General, the Legislature, and the Supreme Court that section 19(a) of the APTRA provided an independent right to judicial review.

In the trial court and the court of appeals, the parties agreed that the Employees Retirement System (ERS) had statutory authority to resolve a contractual dispute between Blount and Metropolitan Life Insurance Company in a contested-case hearing and that, although the ERS's enabling statute did not specifically authorize judicial review of the decision,

judicial review was available under section 19(a) of the APTRA. The court of appeals, *sua sponte,* questioned whether the ERS was empowered to adjudicate the dispute. *See Blount v. Metro. Life Ins. Co.,* 677 S.W.2d 565, 569 (Tex.App.-Austin 1984), *rev'd,* 709 S.W.2d 646 (Tex.1986).

The Third Court of Appeals stated:

The [Texas Employees Uniform Group Insurance Benefits Act] establishes a framework for the purchase of group life, accident, and health insurance for State employees. Section 4 of the Act vests in a "trustee" the sole power to administer and implement the Act. The "trustee" so empowered is the State Board of Trustees of the Employees Retirement System . . . .

In addition, § 4(e) of the Act provides that the trustee shall have full power and authority as to the following:

[E]stablishment of grievance procedures by which the trustee shall act as an appeals body for complaints by employees regarding the allowance and payment of claims, eligibility, and other matters.

Nothing in the Act, unless it be this subsection, purports to vest in the trustee a power to adjudicate claims on a group life insurance contract entered into by the trustee under the Act. [1] The parties have assumed that § 4(e) *does* give the trustee a power to adjudicate such claims and the trial court judgment rests upon the assumption that the trustee has such power.

*Id.* at 568–70 (text of footnote 1 omitted) (emphasis in original). In footnote number one, the court stated that "[t]he judicial review provisions of APTRA § 19 ensure that judicial review is available in a [contested-case hearing]. APTRA §§ 3(2), 19(a)." *Id.* at 569 n. 1. The court later noted that the ERS's enabling statute

"does not provide for judicial review at all in the matter of ordinary contract actions and defenses." *Id.* at 572. After determining that the ERS lacked statutory authority to adjudicate the dispute, the court stated:

We hold, accordingly, that the trial court proceeded on the wrong theory in its adjudication of Mrs. Blount's claim under the substantial evidence rule and as a contested case defined by APTRA § 3(2). In the interests of justice, we reverse the judgment of the trial court and remand the cause for a new trial as an ordinary common-law action on or for breach of the insurance contract.

*Id.* at 573.

In the ERS's application for writ of error, the Attorney General argued that "the Legislature provided for an administrative procedure which affords [state] employees the right of judicial review under the APA § 19 which may not be defeated by a defense of sovereign immunity" and that "[o]nce the Trustee made its determination, applying the standards set out in the contract for insurance, [Blount] was entitled to seek appeal of the Trustee's decision to the district court under the substantial evidence rule stated in APA § 19."

Application for Writ of Error for Employees Retirement System at 10–11, 19, *Employees Ret. Sys. v. Blount*, 709 S.W.2d 646 (Tex.1986) (available at Supreme Court).

In conclusion, the Attorney General stated:

The Court of Appeals failed to consider this appeal as an administrative decision reviewable under the APA § 19 and the substantial evidence rule. Remand to the trial court for retrial of the facts decided by the Trustee is improper under that standard for review. This decision should be reversed and remanded for review of the Trustee's Order as a valid decision in a contested case, by an administrative agency.

*Id.* at 21.

While the case was pending before the Supreme Court, the Legislature amended the relevant enabling statute. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 155, 1985 Tex. Gen. Laws 685.[13] Senate Bill 771 was a direct response to the Third Court of Appeals's decision.[14] Although the enactment provided that the final administrative decision of the ERS was a "contested case under the Administrative Procedure and Texas Register Act" and that "the stan-

---

13. Section 1 of the enactment provided:

*Section 4B. ADJUDICATION OF CLAIMS. (a) The executive director of the Employees Retirement System of Texas has exclusive authority to decide all questions relating to enrollment in or payment of claims arising from programs or coverages provided under authority of this Act, other than questions relating to payment of claims by a health maintenance organization.*

*(b) A decision by the executive director under this section may be appealed only to the trustee. An appeal to the trustee is a contested case under the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes).*

*(c) On appeal of a decision made by the trustee under this section, the standard of review is by substantial evidence.*

*Id.* at 686 (emphasis in original).

14. A House bill analysis stated: "As proposed, S.B. 771 would authorize the Board of Trustees of the Employment [sic] Retirement System to adopt rules of procedure for determining contested insurance cases. The Administrative Procedure and Texas Register Act would be made applicable to such cases. Appeals from decisions would be to the District Court of Travis County. This bill provides statutory authority to the Employment [sic] System of Texas to continue the practices in effect in handling disputed insurance cases prior to the [Third Court of Appeals's] *Blount* decision." HOUSE COMM. ON INSURANCE, BILL ANALYSIS, Tex. S.B. 771, 69th Leg., R.S. (1985) (available at Legislative Reference Library).

dard of review is by substantial evidence," it did not expressly authorize judicial review. Instead, the Legislature relied on the independent right to judicial review provided by section 19(a) of the APTRA.[15] The enactment became effective on May 24, 1985.

On August 1, 1985, the ERS and Metropolitan Life Insurance Company filed a joint motion for rehearing. They informed the Supreme Court of the legislative reaction to the Third Court of Appeals's opinion and asserted:

> [T]hese amendments indicate that the intent of the Legislature all along has been to grant the Trustees of the Employees Retirement System final, binding authority to adjudicate insurance claims arising under the Act, to treat such claims as "contested cases," and to allow appeal of the Trustee's decisions to the state courts only under the substantial evidence standard of review.

Petitioners' Joint Motion for Rehearing for Employees Retirement System and Metropolitan Life Insurance Company at 6, *Employees Ret. Sys. v. Blount,* 709 S.W.2d 646 (Tex.1986) (cause no. C–3448) (filed Aug. 1, 1985) (available at Supreme Court).

On rehearing, this Court reversed the Third Court of Appeals's judgment and affirmed the trial court's judgment. The Court stated that "[t]he primary issue on appeal is whether the ERS trustees have been granted the final binding authority to adjudicate claims of contested cases pursuant to its enabling statute, Tex. Ins.Code Ann. art. 3.50–2 (Vernon 1981) and the Administrative Procedure and Texas Register Act" and concluded that "the agency does have such authority pursuant to Article 3.50–2 and APTRA § 19, and that the trial court properly reviewed the record under the substantial evidence standard." *Employees Ret. Sys. v. Blount,* 709 S.W.2d at 646. This Court's affirmance of the trial court's judgment necessarily reflects its understanding that section 19(a) of the APTRA provided Blount an independent right to judicial review.

In 1989, the Legislature enacted the Health and Safety Code, a nonsubstantive revision. Health and Safety Code, 71st Leg., R.S., ch. 678, 1989 Tex. Gen. Laws 2230. The revisor's note to section 242.061 reflects that the code drafters relied on the plain meaning of section 19(a) of the APTRA when deleting, as redundant and therefore unnecessary, a provision contained in the underlying source law that specifically authorized judicial review. The Legislature had enacted a comprehensive statute in 1953 regulating nursing homes, providing inter alia for the denial, suspension, and revocation of the required facility license. *See* Act of May 25, 1953, 53d Leg., R.S., ch. 413, 1953 Tex. Gen. Laws 1005, 1006–07. The statute provided for judicial review by trial de novo. *Id.* at 1008. In 1985 sunset review legislation, the judicial review provision was amended to provide:

> Sec. 10. JUDICIAL REVIEW. Any applicant or licensee aggrieved by the decision of the Licensing Agency is entitled to judicial review in the manner provided for a contested case under the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes). Judicial review under this section shall be under the substantial evidence rule. Pending final

---

**15.** *Contra Beyer v. Employees Ret. Sys.,* 808 S.W.2d 622, 626 (Tex.App.-Austin 1991, writ denied) ("By stating that the substantial-evidence rule applies 'on appeal' from the Board's decision, [section 4B] authorizes, by necessary implication, a suit for judicial review in a district court. The implication is compelled because the expression 'substantial evidence' would be meaningless otherwise.").

disposition of the matter, the status quo of the applicant or licensee shall be preserved except as the Court otherwise orders in the public interest for the welfare and safeguard of the persons in the institution.

*See* Act of May 27, 1985, 69th Leg., R.S., ch. 931, 1985 Tex. Gen. Laws 3121, 3134.

In 1989, the judicial review provision was codified as section 242.061(b) of the Health and Safety Code, which provided:

(b) The status of a person as an applicant for a license or a license holder is preserved until final disposition of the contested matter, except as the court having jurisdiction of a judicial review of the matter may order in the public interest for the welfare and safety of the residents.

Health and Safety Code, 71st Leg., R.S., ch. 678, 1989 Tex. Gen. Laws 2230, 2469. The revisor's note that accompanied the proposed codification stated:

(4) The revised law omits as unnecessary that part of Section 10 of the source law providing that an applicant or licensee is entitled to judicial review in the manner provided for a contested case. As explained in Revisor's Note (3) under this section, licensing proceedings are governed by the contested case provisions of the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes). Section 19(a) of that act provides that a person who is aggrieved by a final decision in a contested case is entitled to judicial review under the act.

(5) The revised law omits as unnecessary that part of Section 10 of the source law requiring that the substantial evidence rule be used in the judicial review of licensing proceedings. Section 19(e), Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes), requires a court

reviewing a proceeding governed by the act to use the substantial evidence rule unless the law authorizing the proceeding requires otherwise.

TEX. HEALTH & SAFETY CODE ANN. § 242.061 revisor's note (Vernon 2001).

In 1990, two members of the judiciary addressed in non-judicial writings whether section 19(a) of the APTRA provided an independent right to judicial review. Justice Powers of the Third Court of Appeals wrote a book about administrative rulemaking, adjudication, and judicial review in Texas. JOHN E. POWERS, AGENCY ADJUDICATIONS (1990).He stated: "By its terms, APTRA Sec. 19(a) seems to create a general statutory cause of action for judicial review of agency decisions in contested cases. The statutory provision has been construed, however, as not creating such a cause of action." *Id.* at 156. Judge Cofer, a senior district judge in Travis County, authored an article concerning judicial review. Hume Cofer, *Judicial Review of Agency Law Decisions on Scope of Agency Authority*, 42 BAYLOR L.REV. 255 (1990). He stated: "TEX.REV.CIV. STAT. ANN. art. 6252–13a, § 19 seems to create a right of review in addition to the statutes that create agencies and also provide for judicial review." *Id.* at 287 n. 226.

In May 1993, the APTRA was codified in the Government Code, a nonsubstantive revision. Government Code, 73d Leg., R.S., ch. 268, 1993 Tex. Gen. Laws 583. The first sentence of section 19(a) became section 2001.171, which provides: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case *is entitled to judicial review* under this chapter." TEX. GOV'T CODE § 2001.171 (emphasis added).

In June 1993, in *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 113 S.Ct. 2485,

125 L.Ed.2d 38 (1993), the United States Supreme Court addressed again the federal presumption in favor of judicial review. The consolidated case involved two separate lawsuits, each challenging a different regulation issued by the Immigration and Naturalization Service (INS) in administering the Immigration Reform and Control Act of 1986. In resolving the INS's jurisdictional challenge, the Supreme Court stated:

> To be sure, a statutory source of [federal subject-matter] jurisdiction is not lacking, since *28 U.S.C. § 1331,* generally granting federal-question jurisdiction, "confer[s] jurisdiction on federal courts to review agency action." *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Neither is it fatal that the Reform Act is silent about the type of judicial review [the] plaintiffs seek. We customarily refuse to treat such silence "as a denial of authority to [an] aggrieved person to seek appropriate relief in the federal courts," *Stark v. Wickard,* 321 U.S. 288, 309, 64 S.Ct. 559, 88 L.Ed. 733 (1944), and this custom has been "reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (quoting 5 U.S.C. § 702).

*Id.* at 56–57; *see also Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998) ("Section 702 of the APA creates a cause of action for'[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'").

In December 1993, for the first time since deciding *Motorola, Inc. v. Bullock* in 1979, the Third Court of Appeals held that section 2001.171 of the APA did not "create a right of judicial review." *Southwest Airlines v. Tex. High–Speed Rail Auth.,* 867 S.W.2d 154, 158 (Tex.App.-Austin 1993, writ denied). The opinion was issued seven months after the APTRA was codified, and eighteen years after it was originally enacted. With regard to whether section 2001.171 of the APA provided an independent right to judicial review, the court stated only:

> Southwest asserts that sections 2001.171 and 2001.178 provide a right to judicial review of the Authority's order and presumably a waiver of governmental immunity from suit: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." APA § 2001.171. "This subchapter is cumulative of other means of redress provided by statute." APA § 2001.178.

> In *Motorola, Inc.,* however, this Court concluded that former section 19 of APTRA, the predecessor of APA section 2001.171, is a procedural provision that does not extend or limit the jurisdiction of the courts. Section 2001.171, therefore, does not create a right of judicial review by generally waiving the state's immunity from suit, but instead sets out the procedure for a suit for judicial review authorized pursuant to another statutory provision.

*Id.* (citations and footnotes omitted). In contrast, in *Texas Department of Human Services v. ARA Living Centers,* 833 S.W.2d 689 (Tex.App.-Austin 1992, writ denied), the Third Court of Appeals had previously acknowledged that section 12 of the APTRA, now section 2001.038 of the APA,

creates a cause of action to determine the validity or applicability of an agency rule:

> TDHS also argues that ARA's suit to obtain declaratory relief is barred by the doctrine of governmental immunity. This assertion is also without merit. The legislature has, in section 12, given express statutory authorization to bring an action such as the present one. Accordingly, section 12 represents an express waiver of governmental immunity from suit for an action that properly invokes that section of APTRA.
>
> We conclude, therefore, that the trial court had jurisdiction to hear the present case and that it was not barred by the doctrine of governmental immunity.

*Id.* at 693.

In 1995, the Third Court of Appeals decided *Employees Retirement System v. Foy*, 896 S.W.2d 314 (Tex.App.-Austin 1995, writ denied). With regard to section 2001.171 of the APA, the court stated:

> Foy contends next that section 2001.171 of the APA authorizes a cause of action for judicial review, of the kind conducted here in the trial court, in all instances where the legislature has not provided explicitly for such review of the decisions of a specific agency. Section 2001.171 provides as follows: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to a[sic] judicial review under this chapter." APA § 2001.171. Notwithstanding the generality of section 2001.171, the legislature intended the judicial-review provisions of the APA to be procedural only; they do not create a right to judicial review where the right does not exist by reason of another statute specifically granting the right. *Southwest Airlines v. Texas High Speed Rail Auth.*, 867 S.W.2d

154, 158 (Tex.App.-Austin 1993, writ denied); *Motorola, Inc. v. Bullock*, 586 S.W.2d 706, 708–09 (Tex.Civ.App.-Austin 1979, no writ). The reason is almost self-evident. State agencies do many things; they make many different kinds of decisions. These usually affect to some extent a person's "legal right," and the agencies may choose to take these actions only after trial-type procedures similar to "contested case" procedures required by the APA in sections 2001.001–.147. A theory that APA section 2001.171 entitles all persons "aggrieved" to "judicial review" in each instance "invites potentially serious consequences by ushering an unknown and indeterminate number of agency proceedings into the contested case category," and thus into the reviewing courts, even in such administrative controversies as the taking away of "good time" from thousands of state prisoners. Robert W. Hamilton & J.J. Jewett, III, *The Administrative Procedure and Texas Register Act: Contested Cases and Judicial Review*, 54 Tex. L.Rev. 85[sic], 289 (1976). It is unlikely that the legislature intended to so overwhelm the few district courts of Travis county, where suits under APA section 2001.171 must be decided.

*Id.* at 316. Since *Foy*, the Third Court of Appeals has refused to interpret broadly the term "contested case." *See, e.g., Best & Co. v. Tex. State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309 (Tex.App.-Austin 1996, writ denied) ("We reject a proposed construction of the definition [of contested case] that would require an agency to follow contested-case procedures any time rights, duties, or privileges of a party are determined, without regard to whether an adjudicative hearing is required or provided. *See Employees Retirement Sys. v. Foy*, 896 S.W.2d 314, 316

(Tex.App.-Austin 1995, writ denied); Hamilton & Jewett, *supra* at 289–90.") (footnote omitted).

In 1997, the Legislature enacted the Finance Code, a nonsubstantive revision. Finance Code, 75th Leg., R.S., ch. 1008, 1997 Tex. Gen. Laws 3091. The revisor's note to section 152.210 reflects that the code drafters relied on the plain meaning of section 2001.171 of the APA when deleting a provision that specifically authorized judicial review. Section 15 of the Sale of Checks Act, the underlying source law, granted a right of judicial review to applicants for and holders of the required business license. *See* Act of Sept. 4, 1986, 69th Leg., 2d C.S., ch. 16, 1986 Tex. Gen. Laws 40, 44. Section 15 was codified in sections 152.210 and 152.307 of the Finance Code. *See* Finance Code, 75th Leg., R.S., ch. 1008, 1997 Tex. Gen. Laws 3091, 3372, 3374. The revisor's note for section 152.210 stated:

(2) The revised law omits as unnecessary that part of Section 15, V.A.C.S. Article 489d, permitting a license holder to seek judicial review of the commissioner's findings and order under Chapter 2001, Government Code. Section 2001.171, Government Code, provides that a person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under Chapter 2001, Government Code. The provision may therefore be omitted without substantive change. The omitted law reads: "A licensee may seek court review of the Commissioner's findings and order under Chapter 2001, Government Code."

Tex. Fin.Code Ann. § 152.210 revisor's note (Vernon 1998); *see also id.* § 152.307 revisor's note (restating by reference the revisor's note to section 152.210); *id.* § 152.506 revisor's note (stating that the provision specifically authorizing judicial review of cease and desist orders was deleted as unnecessary).

Also in 1997, the Legislature passed sunset review legislation for the TDPRS (1997 enactment). Act of May 31, 1997, 75th Leg., R.S., ch. 1022, 1997 Tex. Gen. Laws 3733. A Sunset Advisory Commission report on the TDPRS issued in 1996 during the legislative interim discussed sixteen issues. *See* Texas Sunset Advisory Commission, Department of Protective and Regulatory Services: Staff Report (1996) (available at Legislative Reference Library). With regard to issue number fifteen, titled "Improve the Administrative Hearings Process Through Transfer to the State Office of Administrative Hearings," the report stated: "This recommendation would transfer the Department's APA hearing function to the State Office of Administrative Hearings.... As with the current hearings process, the decisions by the ALJ would be final unless appealed to court." *Id.* at 147, 151.

Chapter 40 of the Human Resources Code contains general provisions related to the TDPRS. The 1997 enactment added section 40.066 to the Human Resources Code. Act of May 31, 1997, 75th Leg., R.S., ch. 1022, 1997 Tex. Gen. Laws 3733, 3741. The section required the TDPRS and the State Office of Administrative Hearings (SOAH) to "adopt a memorandum of understanding under which the State Office of Administrative Hearings, on behalf of the department, conducts all contested case hearings authorized or required by law to be conducted by the department under the administrative procedure law, Chapter 2001, Government Code." *Id.*

Certain facilities, homes, and agencies that provide child-care services are regulated by the TDPRS under Chapter 42 of the Human Resources Code. The 1997 enactment substantially amended section 42.072 of the Human Resources Code, which governs the revocation of a child-

care facility license. *See id.* at 3749–50.[16] Section 42.072(b), as amended, provided that if the TDPRS proposes to suspend, deny, revoke, or refuse to renew a person's license, registration, or certification, the person is entitled to a hearing conducted by the SOAH. *Id.* at 3749. Section 42.072(e) was deleted. Subsection (e) had expressly authorized de novo judicial review and provided for venue in either "Travis County or the county in which the person's facility is located." *Id.*

The 1997 enactment also added section 42.078 to the Human Resources Code,

which contained the standardized administrative penalty language recommended by the Sunset Advisory Commission. *See id.* at 3751–53. Section 42.078 applied to the holder of a child-care facility license and authorized administrative orders imposing a monetary penalty. The section did not expressly authorize judicial review. Instead, it relied on the independent right to judicial review provided by section 2001.171 of the APA.[17]

Child-care administrators are regulated by the TDPRS under Chapter 43 of the

---

16. Section 37 of the enactment provided:

Sec. 42.072. LICENSE *OR REGISTRA-TION* DENIAL, *SUSPENSION,* OR REVOCATION. (a) The *department* [division] may *suspend,* deny, [or] revoke, *or refuse to renew* the license, *registration,* or certification of approval of a facility *or family home* that does not comply with the requirements of this chapter, the standards and rules of the department, or the specific terms of the license, *registration,* or certification. *The department may revoke the probation of a person whose license or registration is suspended if the person violates a term of the conditions of probation.*

(b) *If the department proposes to take an action under Subsection (a), the person is entitled to a hearing conducted by the State Office of Administrative Hearings. Proceedings for a disciplinary action are governed by the administrative procedure law, Chapter 2001, Government Code. Rules of practice adopted by the board under Section 2001.004, Government Code, applicable to the proceedings for a disciplinary action may not conflict with rules adopted by the State Office of Administrative Hearings.* [The division shall notify the person operating or proposing to operate a facility of the reasons for the denial or revocation and of the person's right to appeal the decision within 30 days after receiving the notice.]

(c) [A person who wishes to appeal a license denial or revocation shall notify the director by certified mail within 30 days after receiving the notice required in Subsection (b) of this section. The person shall send a copy of the notice of appeal to the assigned division representative.

[(d) The denial or revocation of a license or certification and the appeal from that action are governed by the procedure for a contested

case hearing under Chapter 2001, Government Code.

[(e) A person whose license has been denied or revoked may challenge the decision by filing a suit in a district court of Travis County or the county in which the person's facility is located within 30 days after receiving the decision. The trial shall be de novo.

[(f) Records of the hearing shall be kept for two years after a decision is rendered. On request, and at the person's own expense, the division shall supply a copy of the verbatim transcript of the hearing to a person appealing a license denial or revocation in district court.

[(g) A person may continue to operate a facility during an appeal of a license denial or revocation unless the division has obtained injunctive relief under Section 42.074 or civil penalties under Section 42.075 or the facility has been closed under Section 42.073.

[(h)] A person whose license, *registration,* or certification is revoked may not apply for any license, *registration,* or certification under this chapter before the second anniversary of the date on which the revocation takes effect by department or court order.

*(d) The department by rule may provide for denial of an application or renewal for a licensed facility, for certification of approval of a facility, or for registering a family home or may revoke a facility's license or certification or a family home's registration based on findings of criminal history as a result of a background or criminal history check.*
*Id.* (emphasis and strikeout in original).

17. For example, subsection *(o)* provided: *"Judicial review of the order* [imposing a monetary penalty]: *(1) is instituted by filing a peti-*

Human Resources Code. The 1997 enactment added section 43.0106 to the Human Resources Code. *Id.* at 3755. The section provided that if the TDPRS "proposes to suspend, revoke, or refuse to renew a [child-care administrator's] license, the person is entitled to a hearing conducted by the State Office of Administrative Hearings." *Id.* However, the 1997 enactment did not repeal or amend section 43.011 of the Human Resources Code. Section 43.011, which has not been amended since 1979, expressly authorizes de novo judicial review of decisions denying or revoking a child-care administrator's license and provides for venue only "in the county where the person resides." Tex. Hum. Res. Code § 43.011(c)-(d).

Senate Bill 359 was the TDPRS's sunset legislation. Tex. S.B. 359, 75th Leg., R.S. (1997) (available at Legislative Reference Library). The final legislative bill analysis prepared for Senate Bill 359 stated that the "language relating to a hearings and appeals process" contained in section 42.072 of the Human Resources Code was relocated to section 42.078. House Comm. on Human Services, Bill Analysis (May 6, 1997), Tex. S.B. 359, 75th Leg., R.S. (1997) (available at Legislative Reference Li-

brary).[18] In addition, the Sunset Advisory Commission issued a post-session report that reviewed the TDPRS's sunset legislation. *See* Sunset Advisory Commission, Summary of Sunset Legislation: 75th Legislature 99–122 (1997) (available at Legislative Reference Library). The report stated that "[t]he Legislature adopted the Sunset Commission's recommendation to transfer the Department's administrative hearings to the State Office of Administrative Hearings." *Id.* at 104. An attached bill analysis prepared by the commission stated that the 1997 enactment "deletes language [from section 42.072 of the Human Resources Code] relating to a hearing and appeal process and moves this language to section 42.078." *Id.* at 111.

Both bill analyses were incorrect. Section 42.078 of the Human Resources Code, the new administrative penalty section, did not contain the judicial review language that had been deleted from section 42.072.

V

◼ The TDPRS asserts that because section 19(a) of the APTRA was not substantively amended in 1993 when it was codified, the Legislature has adopted the

---

*tion as provided by Subchapter G, Chapter 2001, Government Code; and (2) is under the substantial evidence rule." Id. at 3753 (emphasis in original).*

**18.** The bill analysis provided:

SECTION 30. Amends Section 42.072(a)-(d).

(a) Includes suspension and refusal to renew the license or certification of approval of a facility as penalties for a facility that does not comply with the rules of DPRS or specific terms of the license or certification. Extends to DPRS the authority to revoke the probation of a license holder whose license is suspended if a term of the conditions of probation is violated.

(b) Adds standard language developed by the Sunset Commission. Entitles licensees to a hearing conducted by the State Office of

Administrative Hearings before any sanction may be taken against their license.

(c) Reletters subsections and *deletes language relating to a hearings and appeals process. Relocates this language to Section 42.078.* Specifies that a person whose license, registration, or certification is revoked may not apply for any license, registration, or certification under this chapter until two years after the date on which the revocation occurred.

(d) Authorizes DPRS, by rule, to provide for denial of an application or renewal for a licensed facility or for registering a family home or may revoke a facility's license or a family home's registration based on findings of criminal history as a result of a background or criminal history check.

*Id.* (emphasis added).

Third Court of Appeals's interpretation that the provision does not provide an independent right to judicial review. The TDPRS's legislative acceptance argument fails for several reasons, the simplest being that the proper interpretation of section 2001.171 of the APA is a question of first impression in this Court. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex.2000) (noting that "we have never decided this issue").As stated in part III, the legislative acceptance rule applies only when the relevant statutory provision has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer.

Section 2001.171 of the APA provides: "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case *is entitled to judicial review* under this chapter." TEX. GOV'T CODE § 2001.171 (emphasis added). Mega Child Care and the TLCCA rely on the plain language of section 2001.171. The TDPRS asserts that section 2001.171 "can fairly be read to set forth necessary—but not sufficient—conditions that must be satisfied to qualify for any judicial review that the Legislature has provided in the enabling statute."

The Third Court of Appeals's interpretation of the phrase "is entitled to judicial review" appears to be unique. The TDPRS contends that the court decisions from states with similar judicial review provisions are mixed. However, the TDPRS has cited no cases from other jurisdictions that support the Third Court of Appeals's interpretation of section

2001.171 of the APA, and our own extensive research has located none. Moreover, neither *Motorola, Inc., Southwest Airlines,* nor *Foy* has been cited by a court outside of Texas. In any event, we resolve the conflict among our courts of appeals regarding the proper interpretation of section 2001.171 by applying the plain meaning rule, a well-established rule of statutory construction in Texas.

Section 311.016 of the Government Code, part of the Code Construction Act, provides:

> The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute:
>
> . . . .
>
> (4)"Is entitled to" creates or recognizes a right.

TEX. GOV'T CODE § 311.016. This construction is consistent with dictionary definitions of the term "entitle." [19]

In the context of the Texas Administrative Procedure Act, the phrase "is entitled to judicial review" is unambiguous and, therefore, the plain language of section 2001.171 of the APA creates an independent right to judicial review for those who satisfy the section's threshold requirements. As stated in part III, when the text is unambiguous, a court may disregard the interpretation supported by the statute's plain language only if that interpretation would lead to absurd results. With regard to section 2001.171, we have no basis to conclude that the interpretation supported by its plain language would lead to absurd results.

---

**19.** In the current edition of the leading legal dictionary, "entitle" is defined as: "[t]o grant a legal right to or qualify for." BLACK'S LAW DICTIONARY 553 (7th ed.1999).In Webster's second edition, published in 1954, the term was defined as: "[t]o give a right or legal title to; to qualify (one) for (something). . . ." WEBSTER'S NEW INTERNATIONAL DICTIONARY 854 (Merriam–Webster, 2d ed.1954).

The TDPRS does not directly assert or cite evidence that implementation of the plain meaning of section 2001.171 of the APA—that persons who satisfy the section's threshold requirements are entitled to judicial review of contested-case decisions made by state agencies subject to the APA—would lead to absurd results. However, the TDPRS relies heavily on the Third Court of Appeals's precedent construing section 2001.171, and in *Foy,* the Third Court of Appeals stated:

A theory that APA section 2001.171 entitles all persons "aggrieved" to "judicial review" in each instance "invites potentially serious consequences by ushering an unknown and indeterminate number of agency proceedings into the contested case category," and thus into the reviewing courts, even in such administrative controversies as the taking away of "good time" from thousands of state prisoners. It is unlikely that the legislature intended to so overwhelm the few district courts of Travis county, where suits under APA section 2001.171 must be decided.

*Employees Ret. Sys. v. Foy,* 896 S.W.2d 314, 316 (Tex.App.-Austin 1995, writ denied) (citation omitted).

For various reasons, the Legislature has exempted certain state agencies and particular administrative decisions from all or part of the APA. For example, when originally enacted, the APTRA contained complete exemptions for state agencies wholly financed by federal funds, the Industrial Accident Board, institutions of higher education, and suspensions of driver's licenses. *See* APTRA, 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136, 137, 147. Since 1975, the Legislature has enacted additional exemptions. One of the exemptions, section 2001.226 of the APA, provides:

This chapter does not apply to a rule or internal procedure of the Texas Depart-

ment of Criminal Justice or Texas Board of Criminal Justice that applies to an inmate or any other person under the custody or control of the department or to an action taken under that rule or procedure.

Tex. Gov't Code § 2001.226. This exemption, originally enacted in 1993, addresses the hypothetical problems raised by the Third Court of Appeals in its 1995 *Foy* decision concerning "such administrative controversies as the taking away of 'good time' from thousands of state prisoners." *Foy,* 896 S.W.2d at 316.

The TDPRS asserts that section 2001.171 of the APA neither creates a right to judicial review nor waives the state's sovereign immunity. Our conclusion that section 2001.171 provides an independent right to judicial review when an agency enabling statute neither specifically authorizes nor prohibits judicial review is, as a practical matter, dispositive of the sovereign immunity issue.

Section 2001.174 of the APA provides:

If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE § 2001.174.

■ When providing an independent right to judicial review in section 2001.171 of the APA, the Legislature necessarily understood that state agencies would be sued in court by persons exercising that right, that contested-case decisions of those agencies would be judicially reviewed under the standards set forth in section 2001.174, and that the challenged administrative decisions would be either affirmed, reversed, or remanded as provided by section 2001.174. Therefore, we conclude that section 2001.171 provides a limited waiver of sovereign immunity. *Cf. Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994) (concluding that the Texas Uniform Declaratory Judgments Act provides a limited waiver of governmental immunity).

Our resolution of the sovereign immunity issue is consistent with precedent from courts of appeals concluding that judicial review provisions waive immunity. *See Gruber v. Tex. State Bd. of Pharmacy,* 619 S.W.2d 564, 567 (Tex.Civ.App.-San Antonio 1981, no writ) ("There is no question that the appellant is an entitled party to judicial review under section 19(a) [of the AP-TRA].Consequently, the defense of sovereign immunity is not applicable...."); *Stanfield v. Tex. Dep't of Pub. Safety,* 422 S.W.2d 14, 20 (Tex.Civ.App.-Dallas 1967, writ ref'd n.r.e.) ("Appellee's contention that the trial court lacked jurisdiction because the suit [for judicial review] was one against an agency of the State of Texas and that the State cannot be sued without its express consent must be denied. This is so for the very obvious reason that the Legislature has [in the agency enabling statute] specifically granted such right to bring the suit.").

■ The TDPRS asserts that, even if section 2001.171 of the APA generally provides an independent right to judicial review, the intent of the TDPRS's 1997 sunset review legislation (1997 enactment) was to prohibit judicial review of administrative decisions revoking a child-care facility license. Section 42.072 of the Human Resources Code, which governs the revocation of a child-care facility license, is currently silent with regard to the availability of judicial review; its text neither expressly authorizes nor prohibits judicial review. *See* Tex. Hum. Res.Code § 42.072. In 1997, the TDPRS's sunset review legislation deleted former section 42.072(e), which had expressly authorized de novo judicial review and provided for venue in either "Travis County or the county in which the person's facility is located." Act of May 31, 1997, 75th Leg., R.S., ch. 1022, 1997 Tex. Gen. Laws 3733, 3749.

The TDPRS argues that "[h]ere, the Legislature has expressly manifested its intent to foreclose judicial review of the Department's actions" and, more specifically, that "[t]he fact that the Legislature did not repeal the provision allowing for judicial review of a child-care administrator's license but did repeal the provision allowing for judicial review of a child-care facility's license strongly indicates its intent to eliminate the right to judicial review for the latter category." In response, the TLCCA contends that "[t]he changes made to section 42.072, as a part of a broader set of changes from the 1997 PRS

Sunset Review Process, were intended merely to streamline the PRS contested case process—by moving contested cases to SOAH which previously were performed by PRS in-house—and by adopting standard statutory language of the Sunset Commission for agencies involved in licensing sanctions."

In the 1997 enactment, the Legislature could have expressly prohibited judicial review of contested-case decisions made under section 42.072 of the Human Resources Code. For example, chapter 2260 of the Government Code establishes an administrative procedure to resolve breach-of-contract claims against the state, and section 2260.104(f) provides: "Subchapter G, Chapter 2001 [sections 2001.171–178 of the APA], does not apply to a [contested-case] hearing under this section." TEX. GOV'T CODE § 2260.104(f); *see also Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001) ("[T]he Legislature has expressly precluded judicial review of the administrative judge's rulings under Chapter 2260.").

In this context, certain jurisdictions, including some states that have incorporated the first sentence of section 15(a) of the 1961 model act in their administrative procedure acts, have employed special rules of statutory construction. *See, e.g., Holding's Little Am. v. Bd. of County Comm'rs*, 670 P.2d 699, 702–03 (Wyo.1983) ("The right of judicial review of an administrative decision is statutory. . . . And, to preclude judicial review, the statute, if not specific in withholding that review, must give clear and convincing evidence of an intent to restrict."). We disagree with this approach. Therefore, we will ascertain and effectuate the legislative intent in this context without applying a special rule of statutory construction.

Deleting the language that authorized judicial review, established a de novo scope of review, and provided for local venue from section 42.072 of the Human Resources Code, while retaining the language that authorizes judicial review, establishes a de novo scope of review, and provides for exclusive local venue contained in section 43.011, is some evidence of a legislative intent to prohibit judicial review of contested-case decisions made under section 42.072. However, the TDPRS has provided no legislative history regarding the 1997 enactment that reflects an intent to prohibit judicial review of those decisions, and our own research has discovered none. In fact, the limited legislative history that is available indicates an intent to maintain rather than prohibit judicial review.

■ In the absence of express statutory language prohibiting judicial review, a legislative intent to prohibit judicial review must be established by specific legislative history or other reliable evidence of intent. Given the inconclusive evidence regarding legislative intent in this case, we conclude that, in enacting the TDPRS's 1997 sunset review legislation, the Legislature did not intend to prohibit judicial review of contested-case decisions made under section 42.072 of the Human Resources Code.

Based on the foregoing, we conclude that Mega Child Care is entitled to judicial review of the administrative decision to revoke its child-care facility license. Accordingly, we affirm the court of appeals's judgment.

Justice OWEN filed a concurring opinion.

Justice SCHNEIDER did not participate in the decision.

Justice OWEN, concurring.

I join the Court's judgment and most of what it has written. I write separately

because although section 42.072[1] is not a model of clarity, it is not "silent" regarding judicial review. It does provide for judicial review.

The Department of Protective and Regulatory Services revoked Mega's license in 1998. A hearing was held before an Administrative Law Judge in the State Office of Administrative Hearings, and an ALJ sustained the Department's ruling. Mega sought review in a Harris County District Court. The trial court dismissed the case for want of jurisdiction. The court of appeals reversed and remanded, concluding that section 2001.171 of the Texas Administrative Procedure Act[2] granted the right to judicial review.[3]

Mega is a child-care facility, and the licensing of such facilities is governed by Chapter 42 of the Human Resources Code.[4] Prior to its amendment in 1997, section 42.072 contained an express provision providing for de novo review in district court of the denial or revocation of a license.[5] Section 42.072 provided, in pertinent part:

(a) The division may deny or revoke the license. . . .

* * *

(c) A person who wishes to appeal a license denial or revocation shall notify the director by certified mail within 30 days after receiving the notice required in Subsection (b) of this section. The person shall send a copy of the notice of

appeal to the assigned division representative.

(d) The denial or revocation of a license or certification and the appeal from that action are governed by the procedure for a contested case hearing under the Administrative Procedure and Texas Register Act (Article 6252–13a, Vernon's Texas Civil Statutes).

(e) A person whose license has been denied or revoked may challenge the decision by filing a suit in a district court of Travis County or the county in which the person's facility is located within 30 days after receiving the decision. The trial shall be de novo.[6]

The 1997 amendments to section 42.072 deleted the sentence in subsection (e) regarding de novo review in district court, but other language was added regarding an appeal and the Administrative Procedure Act. Section 42.072, as amended, provided:

(a) The department may suspend, deny, revoke, or refuse to renew the license. . . .

(b) If the department proposes to take an action under Subsection (a), the person is entitled to a hearing conducted by the State Office of Administrative Hearings. Proceedings for a disciplinary action are governed by the administrative procedure law, Chapter 2001, Government Code. Rules of practice adopted by the board under Section 2001.004, Government Code, applicable to the proceedings for a disciplinary ac-

---

1. Tex. Hum. Res. Code § 42.072.

2. Tex. Gov't Code § 2001.171.

3. 81 S.W.3d at 473.

4. Tex. Hum. Res. Code §§ 42.001–.078.

5. Act of May 27, 1979, 66th Leg., R.S., ch. 842, § 1, 1979 Tex. Gen. Laws 2333, 2365–66, *amended by* Act of Mar. 30, 1983, 68th Leg.,

R.S., ch. 23, § 2, 1983 Tex. Gen. Laws 110, 111, *amended by* Act of May 28, 1993, 73d Leg., R.S., ch. 977, § 1, 1993 Tex. Gen. Laws 4243, 4244 (former Tex. Hum. Res. Code § 42.072) (renumbered 1995), *repealed by* Act of May 30, 1997, 75th Leg., R.S., ch. 1063, § 7, 1997 Tex. Gen. Laws 4043, 4054–55.

6. *Id.*

tion may not conflict with rules adopted by the State Office of Administrative Hearings.

\* \* \*

(e) A person may continue to operate a facility or family home during an appeal of a license, listing, or registration denial or revocation unless the revocation or denial is based on a violation which poses a risk to the health or safety of children. The department shall by rule establish the violations which pose a risk to the health or safety of children. The department shall notify the facility or family home of the violation which poses a risk to health or safety and that the facility or family home may not operate. A person who has been notified by the department that the facility or home may not operate under this section may seek injunctive relief from a district court in Travis County or in the county in which the facility or home is located to allow operation during the pendency of an appeal. The court may grant injunctive relief against the agency's action only if the court finds that the childcare operation does not pose a health or safety risk to children. A court granting injunctive relief under this subsection shall have no other jurisdiction over an appeal of final agency action unless conferred by Chapter 2001, Government Code.[7]

Accordingly, pending an appeal, a childcare facility may seek an injunction from a district court in the county where it is located or in Travis County to maintain the status quo.[8] But that court has no other jurisdiction over an appeal "unless conferred by Chapter 2001."[9] I agree with the Court that section 2001.171 of the Administrative Procedure Act[10] confers a right to judicial review. That section says, "A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."[11] Mega exhausted all administrative remedies available within the Department, and it was aggrieved by a final decision in a contested case. It was entitled to judicial review.

Section 2001.176 states that unless otherwise provided by statute, a petition for judicial review must be filed in Travis County.[12] Section 42.072 does not "otherwise provide[ ]", so a district court located in a county other than Travis that entertained a request for injunctive relief pursuant to section 42.072(e) would have "no other jurisdiction" over an appeal. But a district court in Travis County would have jurisdiction of an appeal from the denial or revocation of a license because that jurisdiction is "conferred by Chapter 2001."[13]

Additionally, section 2001.174 provides that if the law does not define the scope of judicial review, the substantial evidence rule governs.[14] Section 42.072 is silent

**7.** Act of May 30, 1997, 75th Leg., R.S., ch. 1063, § 7, 1997 Tex. Gen. Laws 4043, 4054–55 (current version at Tex. Hum. Res.Code § 42.072).

**8.** *Id.*

**9.** *Id.*

**10.** Tex. Gov't Code § 2001.171.

**11.** *Id.*

**12.** *Id.* § 2001.176(a), (b)(1).

**13.** Act of May 30, 1997, 75th Leg., R.S., ch. 1063, § 7, 1997 Tex. Gen. Laws 4043, 4054–55 (current version at Tex. Hum. Res.Code § 42.072(e)).

**14.** Tex. Gov't Code § 2001.174.

regarding the scope of judicial review, so the substantial evidence rule applies.

The State argues that the references to an "appeal" in section 42.072 are only to an "appeal" to the State Office of Administrative Hearings, and that a "final agency action" within the meaning of section 42.072(e) is the Department's revocation or denial of a license, not a determination by a hearing officer in a contested case. Such a cramped construction of section 42.072 is an unreasonable one.

The State additionally argues that there is clear legislative intent that there is no judicial review available to child-care facilities in these circumstances because the Legislature deleted the sentence that was formerly in subsection (e) regarding de novo judicial review, but left similar language intact in Chapter 43, which governs the licensing of child-care administrators. Section 43.011 provides:

> (a) A person whose license application is denied or whose license is revoked is entitled to written notice of the reasons and may request that the department provide a hearing.
> (b) The hearing shall be held within 30 days after the date the department receives the request.
> (c) If the hearing results in the department upholding the license denial or revocation, the person may challenge the department's decision by filing suit in a district court in the county where the person resides within 30 days after the date the person receives notice of the department's final decision.
> (d) The trial shall be de novo.[15]

This disparate treatment of child-care facilities and child-care administrators is not a basis for ignoring the language in section 42.072 that refers to a right to an appeal and also specifically refers to the Administrative Procedure Act. The reasons the Legislature chose review by trial de novo and venue in counties in addition to Travis County for child-care administrators but not for child-care facilities may not be readily apparent. But we cannot draw from this disparate treatment an intent to deny judicial review to child-care facilities.

With regard to any guidance we may obtain from the United States Supreme Court in its construction of the federal Administrative Procedure Act, I note that subsequent to that court's decision in *Abbott Laboratories v. Gardner*,[16] cited by the Court today, the United States Supreme Court decided *Block v. Community Nutrition Institute*.[17] In that case, the Supreme Court held that consumers of dairy products were not entitled to seek judicial review under the federal Administrative Procedure Act of milk market orders issued by the Secretary of Agriculture because the Agriculture Marketing Agreement Act of 1937 impliedly precluded that right when it expressly granted the right of judicial review to producers and handlers of dairy products but was silent with regard to consumers.[18] The Supreme Court said, "In particular, at least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded."[19]

However, as discussed above, section 42.072 is not silent about judicial review

**15.** Tex. Hum. Res.Code § 43.011.

**16.** 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**17.** 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).

**18.** *Id.* at 341, 346–52, 104 S.Ct. 2450.

**19.** *Id.* at 349, 104 S.Ct. 2450.

for child-care facilities Moreover, in discussing *Abbott*, the Supreme Court said it has found "the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is 'fairly discernable in the statutory scheme.'"[20] In making that determination, the statutory scheme as a whole must be considered, and a "balanced approach" to statutory construction must be taken.[21] Applying these principles to section 42.072 and the Legislature's scheme for child-care providers as a whole, no preclusion of judicial review for child-care facilities can fairly be discerned.

One other matter is whether to remand this case to the Harris County District Court from which it came. As discussed, section 2001.176 directs that a petition for judicial review is to be filed in Travis County.[22] The Department has not raised this issue, however, and section 2001.176's requirement appears to be mandatory but not jurisdictional.[23] Therefore, remand to the Harris County District Court for further proceedings is appropriate.

I accordingly concur in the judgment rendered by the Court.

---

20. *Id.* at 351, 104 S.Ct. 2450.

21. *Id.* at 349, 350, 104 S.Ct. 2450.

22. TEX. GOV'T CODE § 2001.176(b)(1).

23. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000) (holding that certain statutory requirements under the wrongful death statute were not jurisdictional and abrogating cases such as *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 891–92 (Tex.1986), which held that the place of filing requirement in a similar statute was jurisdictional); *see also Sierra Club v. Tex. Natural Res. Conservation Comm'n*, 26 S.W.3d 684, 688 (Tex.

App.-Austin 2000) (holding that section 2001.176(b)(2)'s service requirement is not jurisdictional under *Dubai*), *aff'd on other grounds*, 70 S.W.3d 809, 811, 814–15 (Tex. 2002) (indicating that *Grounds* was "overruled in part" by *Dubai*, but not reaching the jurisdictional issue, having concluded that the statutory requirements were satisfied); *cf. K.D.F. v. Rex*, 878 S.W.2d 589, 595 n. 5 (Tex. 1994) (listing section 2001.176 as an example of a statute whose purpose is to "minimiz[e] the litigation costs that taxpayers must bear by providing state agencies with a convenient venue in which to litigate").