

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

December 20, 2007

Mr. Buddy Garcia, Chair
Texas Commission on Environmental Quality
Post Office Box 13087
Austin, Texas 78711-3087

Opinion No. GA-0587

Re: What limitations, if any, the Legislature has imposed on the Texas Commission on Environmental Quality with regard to tax exemption and tax rollback relief for pollution control property (RQ-0635-GA)

Dear Mr. Garcia:

You ask what, if any, limitations the Legislature has imposed on the Texas Commission on Environmental Quality ("TCEQ") with regard to tax exemption and tax rollback relief for pollution control property. Specifically, you ask whether the implementation of TCEQ's rule is restricted to "pollution control property associated with advanced clean energy projects."[1]

House Bill 3732, an act "relating to the implementation of advanced clean energy projects and other environmentally protective projects in this state," was enacted by the most recent session of the Legislature. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1277, 2007 Tex. Gen. Laws 4261, 4261. Among other things, House Bill 3732 amended the Clean Air Act, chapter 382 of the Health and Safety Code, by adding a definition for "advanced clean energy project." *See id.* § 2, at 4262 (codified at TEX. HEALTH & SAFETY CODE ANN. § 382.003(1-a) (Vernon Supp. 2007)).[2]

---

[1]Letter from Buddy Garcia, Chair, Texas Commission on Environmental Quality, to Honorable Greg Abbott, Attorney General of Texas, at 2 (Oct. 11, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us).

[2]"'Advanced clean energy project' means a project for which an application for a permit under this chapter is received by the [TCEQ] on or after January 1, 2008, and before January 1, 2020, and that:

> (A) involves the use of coal, biomass, petroleum coke, solid waste, or fuel cells using hydrogen derived from such fuels, in the generation of electricity, or the creation of liquid fuels outside of the existing fuel production infrastructure while co-generating electricity;
>
> (B) is capable of achieving on an annual basis a 99 percent or greater reduction of sulfur dioxide emissions, a 95 percent or greater reduction of mercury emissions, and an emission rate for nitrogen oxides of 0.05 pounds or less per million British thermal units; and

(continued...)

House Bill 3732 also amended two provisions of the Tax Code that relate to tax exemptions and tax rollback relief for property used for pollution control purposes. *See id.* §§ 4–5, at 4264–65 (codified at TEX. TAX CODE ANN. §§ 11.31, 26.045 (Vernon Supp. 2007)). Section 4 of House Bill 3732 amended section 11.31 of the Tax Code. *See* TEX. TAX CODE ANN. § 11.31 (Vernon Supp. 2007). That section refers to exemptions from "taxation of all or part of real and personal property that the person owns and that is used wholly or partly as a facility, device, or method for the control of air, water, or land pollution." *Id.* § 11.31(a); *see also* TEX. CONST. art. VIII, § 1-*l* (permitting the Legislature to authorize tax exemptions for governmentally mandated facilities, devices, or methods for the control of air, water, or land pollution). The executive director of the TCEQ must issue a letter to the property owner stating whether "the facility, device, or method is used wholly or partly to control pollution." TEX. TAX CODE ANN. § 11.31(d) (Vernon Supp. 2007). The person seeking the exemption must provide the chief appraiser a copy of the letter, and the chief appraiser is required to "accept a final determination . . . as conclusive evidence that the facility, device, or method is used wholly or partly as pollution control property." *Id.* § 11.31(i).

House Bill 3732 added subsection (k) to section 11.31 to specify a list of facilities, devices, or methods that may generate a tax exemption when a property owner follows the process described in the remainder of section 11.31:

> (k) The Texas Commission on Environmental Quality shall adopt rules establishing a nonexclusive list of facilities, devices, or methods for the control of air, water, or land pollution, which must include:
>
> (1) coal cleaning or refining facilities;
>
> (2) atmospheric or pressurized and bubbling or circulating fluidized bed combustion systems and gasification fluidized bed combustion combined cycle systems;
>
> (3) ultra-supercritical pulverized coal boilers;
>
> (4) flue gas recirculation components;
>
> (5) syngas purification systems and gas-cleanup units;
>
> (6) enhanced heat recovery systems;
>
> (7) exhaust heat recovery boilers;

---

[2](...continued)
> (C) renders carbon dioxide capable of capture, sequestration, or abatement if any carbon dioxide is produced by the project.

TEX. HEALTH & SAFETY CODE ANN. § 382.003(1-a) (Vernon Supp. 2007).

(8) heat recovery steam generators;

(9) superheaters and evaporators;

(10) enhanced steam turbine engines;

(11) methanation;

(12) coal combustion or gasification byproduct and coproduct handling, storage, or treatment facilities;

(13) biomass cofiring storage, distribution, and firing systems;

(14) coal cleaning or drying processes, such as coal drying/moisture reduction, air jigging, precombustion decarbonization, and coal flow balancing technology;

(15) oxy-fuel combustion technology, amine or chilled ammonia scrubbing, fuel or emission conversion through the use of catalysts, enhanced scrubbing technology, modified combustion technology such as chemical looping, and cryogenic technology;

(16) if the United States Environmental Protection Agency adopts a final rule or regulation regulating carbon dioxide as a pollutant, property that is used, constructed, acquired, or installed wholly or partly to capture carbon dioxide from an anthropogenic source in this state that is geologically sequestered in this state;

(17) fuel cells generating electricity using hydrogen derived from coal, biomass, petroleum coke, or solid waste; and

(18) any other equipment designed to prevent, capture, abate, or monitor nitrogen oxides, volatile organic compounds, particulate matter, mercury, carbon monoxide, or any criteria pollution.

*Id.* § 11.31(k).

Likewise, section 5 of House Bill 3732 amended section 26.045 of the Tax Code. *See id.* § 26.045. Section 26.045 provides that the

rollback tax rate for a political subdivision of this state is increased by the rate that, if applied to the total current value, would impose an amount of taxes equal to the amount the political subdivision will spend out of its maintenance and operation funds under Section

26.012(16)[3] to pay for a facility, device, or method for the control of air, water, or land pollution that is necessary to meet the requirements of a permit issued by the [TCEQ].

*Id.* § 26.045(a). Section 26.045 describes the process whereby a political subdivision "receive[s] an adjustment to the rollback tax rate." *Id.* § 26.045(c)–(d). "A political subdivision of the state seeking an adjustment in its rollback tax rate" is directed to "provide to its tax assessor a copy of the letter issued by the executive director of the [TCEQ]," and the tax assessor is required to "accept the copy of the letter from the executive director as conclusive evidence that the facility, device, or method is used wholly or partly as pollution control property." *Id.* § 26.045(i). House Bill 3732 added subsection (f) to section 26.045 of the Tax Code, and subsection (f) is *identical* to the language adopted for subsection (k) of section 11.31. *Compare id.* § 11.31(k), *with id.* § 26.045(f). In the interest of brevity, we therefore need not repeat it here.

The language added to sections 11.31 and 26.045 of the Tax Code does not on its face purport to limit TCEQ's rule-making authority to those facilities, devices, or methods that comport with the definition of "advanced clean energy project."[4] When a statutory text is unambiguous, a court, and by extension this office, must adopt the construction that is supported by the statute's plain language, unless that construction would lead to absurd results. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004). In the situation you pose, the plain-language rule requires the conclusion that neither section 11.31(k) nor section 26.045(f) of the Tax Code confines the TCEQ's rule-making authority to pollution control facilities, devices, or methods that are associated with advanced clean energy projects. *See also* Act of May 28, 2007, 80th Leg., R.S., ch. 1277, 2007 Tex. Gen. Laws 4261, 4261 (an act "relating to the implementation of advanced clean energy projects *and other environmentally protective projects in this state*") (emphasis added).

---

[3]Section 26.012(16) defines "[m]aintenance and operations" as "any lawful purpose other than debt service for which a taxing unit may spend property tax revenues." TEX. TAX CODE ANN. § 26.012(16) (Vernon Supp. 2007).

[4]A brief submitted on behalf of the Sierra Club, Lone Star Chapter, acknowledges that "[w]hile many of the legislators may have given the impression that the tax breaks would only apply to clean energy projects, as defined in the bill, *there is no specific statutory language in HB 3732 that ties the new list of equipment for property tax exemptions to the clean energy project definition*." Brief from Ken Kramer, Director and Cyrus Reed, Policy Consultant, Lone Star Chapter, Sierra Club, at 2 (Nov. 13, 2007) (on file with the Opinion Committee) (emphasis added).

**S U M M A R Y**

Neither section 11.31(k) nor section 26.045(f) of the Tax Code restricts the rule-making authority of the Texas Commission on Environmental Quality to only those pollution control facilities, devices, or methods associated with advanced clean energy projects.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee